1           UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF TEXAS
2                LUBBOCK DIVISION

3   UNITED STATES OF AMERICA,         )
           Plaintiff,                 )
4                                     )
    VS.                               )   CAUSE NO. 5:20-CR-165-H
5                                     )
    THOMAS JOHN BOUKAMP,              )
6           Defendant.                )

7

8      -------------------------------------------------------

9            FARETTA HEARING and ARRAIGNMENT
        BEFORE THE HONORABLE D. GORDON BRYANT, JR.,
10             UNITED STATES MAGISTRATE JUDGE

11                   MAY 4, 2022
                  LUBBOCK, TEXAS
12     -------------------------------------------------------

13

14

15

16

17

18

19

20

21

22

23

24   PROCEEDINGS RECORDED BY DIGITAL SOUND RECORDING; TRANSCRIBED
     BY MECHELLE DANIEL, FEDERAL OFFICIAL COURT REPORTER, 1205 TEXAS
25   AVENUE, LUBBOCK, TEXAS 79401, (806) 744-7667.

```
1                     A P P E A R A N C E S

2

   FOR THE GOVERNMENT:
3  UNITED STATES ATTORNEY'S OFFICE
   1205 TEXAS AVENUE, SUITE 700
4  LUBBOCK, TEXAS 79401
   BY:  CALLIE WOOLAM
5       JEFFREY R. HAAG

6

   FOR THE DEFENDANT:
7  HARRINGTON & MAHONEY
   ATTORNEYS AT LAW
8  70 NIAGARA STREET, 3rd FLOOR
   BUFFALO, NEW YORK 14202
9  BY:  MARK J. MAHONEY

10

   HENRY GREEN BOSTWICK
11 ATTORNEY AT LAW
   1901 EAST PALM VALLEY BLVD.
12 ROUND ROCK, TEXAS 78664

13

14

15

16

17

18                     *  *  *  *  *

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2              THE COURT:  The Court calls for arraignment Case
 3    Number 5:20-CR-165-H-BQ-1, United States of America vs. Thomas
 4    John Boukamp.
 5              MS. WOOLAM:  Callie Woolam on behalf of the
 6    United States.  Ready to proceed, Your Honor.
 7              MR. BOSTWICK:  Your Honor, Henry Bostwick on behalf
 8    of the defendant.  Mark Mahoney on behalf the defendant.
 9              May we approach the bench?
10              THE COURT:  You may.
11         (BENCH DISCUSSION OFF THE RECORD)
12              THE COURT:  Mr. Boukamp, if you would stand,
13    please, sir.
14              THE DEFENDANT:  Yes, Your Honor.
15              THE COURT:  Now, we have scheduled for this morning
16    your arraignment on the second superseding indictment.  Your
17    attorney has advised me that you wish to represent yourself in
18    this matter.  Is that correct?
19              THE DEFENDANT:  Yes, I do, Your Honor.
20              THE COURT:  All right, sir.  That will require a
21    separate hearing, and I'm going to take that up at the end of
22    this morning's docket.  So if you would just have a seat back
23    there, and I'll come back to your case in a moment.
24              THE DEFENDANT:  Absolutely, Your Honor.
25              UNIDENTIFIED SPEAKER:  Thank you, Judge.
```

```
 1                   THE COURT:  Yes, thank you.
 2          (RECESS IN HEARING)
 3                   THE COURT:  All right.  The Court re-calls Case
 4     Number 5:20-CR-165-H-BQ-1, United States of America vs. Thomas
 5     John Boukamp.
 6                   MS. WOOLAM:  Callie Woolam on behalf of the
 7     United States.  Ready to proceed, Your Honor.
 8                   THE DEFENDANT:  Thomas John Boukamp on behalf of
 9     myself.
10                   THE COURT:  Well, not yet.  If the attorneys will
11     go ahead and announce your appearance again, please.
12                   MR. MAHONEY:  For the defense, Mark Mahoney, Your
13     Honor, and Henry Bostwick.
14                   MR. BOSTWICK:  Hello again, Your Honor.
15                   THE COURT:  All right.  So as I indicated earlier,
16     this was originally scheduled for an arraignment on the second
17     superseding indictment.  Mr. Boukamp, it's my understanding
18     that you do wish to terminate the representation of your
19     attorneys and represent yourself.  Is that correct?
20                   THE DEFENDANT:  Yes, Your Honor.
21                   THE COURT:  What is the government's position in
22     response to this matter?
23                   MS. WOOLAM:  Your Honor, there was a competency
24     hearing yesterday, and Mr. Boukamp was found competent to stand
25     trial.  We believe that, assuming he answers all the questions
```

1    satisfactorily for the Court for a Faretta hearing, he could be

2    able to represent himself.  We would request that a member of

3    the Federal Public Defender's Office be appointed as standby

4    counsel though.

5          THE COURT:  All right.  Thank you.

6          Now, Mr. Boukamp, the law is clear that you do have

7    a constitutional right to represent yourself.

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  We have a lot of constitutional rights

10   that sometimes may not necessarily need to be exercised.  And I

11   want you to know up front that, first of all, you obviously

12   have retained counsel.  And my general advice to individuals

13   who wish to represent themselves is not to do so, and I'll go

14   over a number of reasons with you here in a moment as to why I

15   believe that's the case.

16         But for me to find that you're able to proceed in

17   this manner, I need to confirm that this is a knowing and

18   voluntary decision on your part, and an informed decision.  So

19   for that reason, I need to ask you a number of questions.

20         THE DEFENDANT:  Absolutely.

21         THE COURT:  Now, as both--well, as all the

22   attorneys are aware, a competency hearing was conducted over

23   the last day or two, and you were specifically found to be

24   competent to proceed in this matter.  Correct?

25         THE DEFENDANT:  Yes, Your Honor.

```
1                    THE COURT:  Now, let me ask you this.  Have you

2       ever studied the law?

3                    THE DEFENDANT:  Not formally, no, Your Honor.

4                    THE COURT:  Okay.  Well, in what context have you

5       studied the law?

6                    THE DEFENDANT:  Jailhouse lawyer-type study.

7                    THE COURT:  Have you ever--have you ever

8       represented yourself in a criminal action?

9                    THE DEFENDANT:  Absolutely not, Your Honor.

10                   THE COURT:  I'm going to ask the government's

11      attorney at this time to read for you the charges that are

12      contained in the second superseding indictment.

13                   THE DEFENDANT:  Yes, Your Honor.

14                   MS. WOOLAM:  Yes, Your Honor.  There are 16 counts

15      in the second superseding indictment.

16                   Count 1, transportation of a minor with intent to

17      engage in criminal sexual conduct.  From on or about

18      November 13th, 2020, to on or about November 22nd, 2020, in the

19      Lubbock Division of the Northern District, and elsewhere,

20      Thomas John Boukamp, defendant, did knowingly transport an

21      individual who had not attained the age of eighteen years in

22      interstate and foreign commerce with the intent that such

23      individual engage in sexual activity for which any person could

24      be charged with a criminal offense, that is, a violation of

25      Michigan Penal Code, Section 750.520d, which makes it a crime
```

1    to engage in sexual penetration with another person while the

2    other person is at least thirteen years of age and under

3    sixteen years of age, in violation of Title 18,

4    United States Code, Section 2423(a).

5            Count 2, travel with intent to engage in illicit

6    sexual conduct.  From on or about November 11th, 2020, to on or

7    about November 22nd, 2020, in the Lubbock Division of the

8    Northern District of Texas, and elsewhere, Thomas John Boukamp,

9    defendant, did knowingly travel in interstate commerce for the

10   purpose of engaging in any illicit sexual conduct, as defined

11   in Title 18, United States Code, Section 2423(f), in violation

12   of Title 18, United States Code, Section 2423(b).

13           Count 3, enticement and attempted enticement of a

14   minor.  From on or about August 31st, 2020, to on or about

15   November 22nd, 2020, in the Lubbock Division of the Northern

16   District of Texas, and elsewhere, Thomas John Boukamp,

17   defendant, did knowingly use a facility and means of interstate

18   and foreign commerce, including a computer, to persuade,

19   induce, and entice, and attempt to do so, an individual who had

20   not attained the age of eighteen years, to engage in sexual

21   activity for which Boukamp could be charged with a criminal

22   offense, that is, a violation of Michigan Penal Code

23   Section 750.520d, which makes it a crime to engage in sexual

24   penetration with another person when the other person is at

25   least thirteen years of age and under sixteen years of age, in

1    violation of Title 18, United States Code, Section 2422(b).

2              Count 4, receipt of child pornography.  On or about

3    October 9th, 2020, in the Lubbock Division of the Northern

4    District of Texas, and elsewhere, Thomas John Boukamp,

5    defendant, did knowingly receive a visual depiction, that had

6    been shipped and transported using any means and facility of

7    interstate and foreign commerce, had been shipped and

8    transported in and affecting interstate and foreign commerce,

9    and was produced using materials which had been mailed and

10   shipped and transported using any means and facility of

11   interstate and foreign commerce, including by computer; and the

12   production of such visual depiction involved the use of a minor

13   engaging in sexually explicit conduct, that is, the lascivious

14   exhibition of the genitals and pubic area of said minor, and

15   such visual depiction was of such conduct, in violation of

16   Title 18, United States Code, Sections 2252(a)(2) and (b).

17             Count 5, cyber stalking.  From on or about a date

18   unknown to the grand jury, to on or about November 13th, 2020,

19   in the Lubbock Division of the Northern District of Texas, and

20   elsewhere, Thomas John Boukamp, defendant, with intent to

21   injure, harass, and intimidate Jane Doe, a person under the age

22   of eighteen years, used an interactive computer service, an

23   electronic communication service, an electronic communication

24   service of interstate commerce, and facilities of interstate

25   and foreign commerce, to engage in a course of conduct that

1    caused, attempted to cause, and would reasonably be expected to

2    cause substantial emotional distress to Doe, and in doing so,

3    knowingly engaged in a sexual act with Jane Doe, a person who

4    had attained the age of twelve years but not attained the age

5    of sixteen years, and was at least four years younger than

6    Boukamp, in violation of Title 18, United States Code,

7    Section 2243(a), without regard to whether the offense was

8    committed in the special maritime and territorial jurisdiction

9    of the United States or in a federal prison, in violation of

10   Title 18, United States Code, Sections 2261A(2) and 2261(b)(4).

11            Count 6, receipt of child pornography.  On or about

12   May 1, 2020, in the Lubbock Division of the Northern District

13   of Texas, and elsewhere, Thomas John Boukamp, defendant, did

14   knowingly receive a visual depiction, that had been shipped and

15   transported using any means and facility of interstate and

16   foreign commerce, had been shipped and transported in and

17   affecting interstate and foreign commerce, and was produced

18   using materials which had been mailed and shipped and

19   transported using any means and facility of interstate and

20   foreign commerce, including by computer; and the production of

21   such visual depiction involved the use of a minor engaging in

22   sexually explicit conduct, that is, the lascivious exhibition

23   of the genitals and pubic area of said minor and such visual

24   depiction was of such conduct, in violation of Title 18,

25   United States Code, Sections 2252(a)(2) and (b).

1                   Counts 7 through 16.  On or about the dates set

2          forth below, in a chart provided in the second superseding

3          indictment, in the Lubbock Division of the Northern District of

4          Texas, and elsewhere, Thomas John Boukamp, defendant, did use,

5          persuade, induce, and entice, and attempt to do so, Jane Doe, a

6          person under the age of eighteen years, to engage in sexually

7          explicit conduct for the purpose of producing a visual

8          depiction of such conduct, knowing and having reason to know

9          that such visual depiction would be transported and transmitted

10         in interstate and foreign commerce, and which visual depiction

11         was actually transported and transmitted using any means and

12         facility of interstate and foreign commerce and in and

13         affecting interstate and foreign commerce, and which visual

14         depiction was produced using materials that had been mailed,

15         shipped, and transported in and affecting interstate and

16         foreign commerce by any means, including by a computer.

17                 Count 7 involves an image as IMG 6575 that was

18         produced on April 28th, 2020.  Count 8 involves IMG 6690 that

19         was produced on May 2nd, 2020.  Count 9 involves IMG 6948 that

20         was produced on May 16th, 2020.  Count 10 involves IMG 6949

21         that was produced on May 16th, 2020.  Count 11 involves

22         IMG 6950 that was produced on May 16th, 2020.  Count 12

23         involves IMG 7062 that was produced on May 23rd, 2020.

24         Count 13 involves IMG 7613 that was produced on June 22nd,

25         2020.  Count 14 involves IMG 8054 that was produced on

1   July 17th, 2020.  Count 15 involves IMG 8055 that was produced

2   on July 17th, 2020.  And Count 16 involves IMG 8094 that was

3   produced on July 20th, 2020, each count being in violation of

4   Title 18, United States Code, Section 2251(a).

5           This morning, I also provided a copy of the second

6   superseding indictment to Mr. Boukamp's attorneys, and I

7   believe he was following along during the reading of that.

8           THE COURT:  And I notice there's also a forfeiture

9   notice as well.  Correct?

10          MS. WOOLAM:  That's correct, Your Honor.

11          THE COURT:  All right.

12          All right.  Mr. Boukamp, were you following along

13  with the indictment there as government counsel read through

14  it?

15          THE DEFENDANT:  I--I was, Your Honor.  Has the

16  cyber stalking charge been changed to the zero to life for--

17          THE COURT:  Well, we'll go over punishment in a

18  moment.

19          THE DEFENDANT:  Okay.

20          THE COURT:  I'm, at this point, just asking if--

21          THE DEFENDANT:  I would object to that.

22          THE COURT:  I'm sorry?

23          THE DEFENDANT:  I would object to that, the change

24  to that charge.

25          THE COURT:  Well, I'm not asking you at the moment

1    for an objection.

2              THE DEFENDANT:  Okay.

3              THE COURT:  Did you--first of all, did you follow

4    along as the government's attorney read the counts in the

5    second superseding indictment?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Do you understand the nature of the

8    charges that are alleged against you?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Do you understand that, typically, a

11   defendant in federal court faces one, two, maybe three counts.

12   You understand you're facing 16 counts?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  All right.  I'm going to ask the

15   government's attorney at this time to also state for the record

16   the punishments that go along with each of these counts.

17             Ms. Woolam?

18             MS. WOOLAM:  Yes, Your Honor.

19             As to Count 1:  A term of imprisonment of not less

20   than 10 years and up to life; a fine of not more than $250,000,

21   or both; plus a term of supervised release of not less than

22   5 years and up to life.

23             As to Count 2:  A term of imprisonment of not more

24   than 30 years; a fine of not more than $250,000, or both; plus

25   a term of supervised release of not less than 5 years and up to

1    life.

2           As to Count 3:  A term of imprisonment of not less

3    than 10 years and up to life; a fine of not more than $250,000,

4    or both; plus a term of supervised release of not less than

5    5 years and up to life.

6           As to Counts 4 and 6:  A term of imprisonment of

7    not less than 5 years, nor more than 20 years; a fine of not

8    more than $250,000, or both; plus a term of supervised release

9    of up to life.

10           As to Count 5, a term of life imprisonment; a fine

11    of not more than $250,000, or both; plus a term of supervised

12    release of not less than 3 years.

13           As to Counts 7 through 16:  A term of imprisonment

14    of not less than 15 years, nor more than 30 years for each

15    count; a fine of not more than $250,000, or both; plus a term

16    of supervised release of not less than 5 years and up to life.

17           For a total maximum penalty of life imprisonment; a

18    fine of $4 million; plus a life term of supervised release

19    which follows a term of imprisonment; costs of incarceration

20    and supervision; and forfeiture of property and restitution

21    could be ordered for any victim of the offense.  If the

22    defendant violates the conditions of supervised release, he

23    could be imprisoned and subject to additional terms of

24    supervised release and imprisonment as determined by the Court

25    in accordance with law.

1          There's also a $1600 mandatory special assessment,

2     which is $100 per count.  And, if the Court finds that the

3     defendant is not indigent, he would be required to pay an

4     additional $80,000 special assessment pursuant to Title 18,

5     United States Code, Section 3014, which is $5,000 per count.

6          THE COURT:  And, Ms. Woolam, if convicted on more

7     than one of these counts, could they run consecutively?

8          MS. WOOLAM:  Yes, Your Honor.  All of the counts

9     could be stacked consecutively, that's correct.

10         THE COURT:  All right.  Thank you.

11         All right, Mr. Boukamp.  First of all, do you

12    understand the penalties that you face on each of the counts

13    that are alleged in the second superseding indictment?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  And do you understand that multiple

16    counts contain a sentence of up to life?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  And do you understand what the

19    government's attorney just said, that each of these counts--the

20    sentences for those could be stacked to where, until you

21    complete one, the clock would not start running on the other?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Now, if you are found guilty on any of

24    these counts, do you understand that there are sentencing

25    guidelines that may have an effect on the term of your

```
 1    sentence?

 2                THE DEFENDANT:  Yes, Your Honor.

 3                THE COURT:  Have you ever worked with the

 4    sentencing guidelines before?

 5                THE DEFENDANT:  I haven't worked with them in the

 6    sense that, you know, I've been subject to them before, but I

 7    have looked at them and I have reviewed them.  I think any--any

 8    way you spin it, I would be doing life if I was found guilty.

 9                THE COURT:  Do you understand that if you represent

10    yourself, you are totally on your own, that the Court or no one

11    else can provide you legal advice, unless I were to appoint

12    standby counsel?

13                THE DEFENDANT:  I'm aware of that now, Your Honor.

14                THE COURT:  You said you're aware of it now?

15                THE DEFENDANT:  Yes.

16                MR. MAHONEY:  May I be heard, Judge?

17                THE COURT:  You may.

18                MR. MAHONEY:  I'm still representing him.

19                THE COURT:  Stand, please.

20                MR. MAHONEY:  Judge, I think that his concern is--

21    I think he's always entitled to legal advice from any lawyer;

22    it's just a question of representation.  So I--

23                THE COURT:  Well, if he's--  That's my question.

24    If you--if I allow you to represent yourself, you will not have

25    an attorney there with you, unless there is standby counsel.
```

```
1    Do you understand that?
2                 THE DEFENDANT:  Yes.  Not in court, but to seek
3    legal advice outside of court, would I still be able to do that
4    with Mr. Mahoney?
5                 THE COURT:  That's up to Mr. Mahoney.  He's--
6                 MR. MAHONEY:  That was my point, Judge.  In other
7    words--
8                 THE COURT:  You're going to be in jail.  I have no
9    idea where Mr. Mahoney will be.  So you're--if you wish to have
10   legal representation, it would make sense that you would rather
11   him be seated at counsel table with you than--  Where are you
12   from, sir?
13                MR. MAHONEY:  Judge, I'm from Buffalo.  I think the
14   point is that both of us, as his attorneys, oppose his being
15   allowed to represent himself and--
16                MR. BOSTWICK:  Vehemently, Your Honor.
17                MR. MAHONEY:  --and want to make sure we're always
18   available to talk to him in case he starts considering changing
19   his mind or just if he needs to talk.  So that's the only point
20   I wanted to--so--
21                THE COURT:  Well, clearly you have the right, to
22   the extent you can in custody, to talk to anyone, and that
23   would include these two attorneys, which, I guess, gives rise
24   to the question, if you believe their advice is helpful to you,
25   why are you terminating their services and why do you want to
```

```
1    represent yourself?

2              THE DEFENDANT:  I think we have very divergent

3    views about the direction of this case, and I think this case

4    would actually be better served if I was the one speaking to

5    the jury.

6              THE COURT:  Well, there are any number of attorneys

7    out there that you could hire that may agree with your approach

8    to the case, so--

9              THE DEFENDANT:  I've already gone through three.

10             THE COURT:  --how about finding a different

11   attorney as opposed to going at it alone?

12             THE DEFENDANT:  I--me and attorneys really don't

13   get along, Your Honor.  It's just--it's a problem.  And I've

14   not found an attorney that I can trust with my life.  I mean,

15   this is my life.  I think only my words and my words alone will

16   be able to potentially give me a fair--well, I'm not sure about

17   fair, but decent shot at trial, Your Honor.

18             THE COURT:  Well, speaking of the trial itself,

19   we'll get into that in a little bit in a moment.  But as far as

20   the victim--or the alleged victim in this case is concerned, do

21   you understand that she may not appear at the trial at all?

22             THE DEFENDANT:  How would that be possible, Your

23   Honor?

24             THE COURT:  I'm just asking you to--do you

25   understand that possibility, that the government may or may not
```

```
1    call her as a witness?

2              THE DEFENDANT:  I would--I would actually call her

3    as a witness if that's possible.  I would call her and directly

4    examine her.

5              THE COURT:  All right.  But do you understand

6    that's a--that is a possibility?

7              THE DEFENDANT:  That they do not call her or that--

8              THE COURT:  Correct.

9              THE DEFENDANT:  Can I--am I not allowed to call

10   her?  Because I--

11             THE COURT:  I'm not--I'm just asking if you

12   understand that's a possibility, that the government may not

13   call her as a witness.

14             THE DEFENDANT:  Yes, I do understand that, Your

15   Honor.

16             THE COURT:  And then going back to my previous

17   question, when you answered it I think by saying you would

18   consult with an attorney, if you represent yourself, do you

19   understand that the Court cannot provide you any assistance or

20   guidance in regard to trying your case?  For example, the

21   question you just asked me.

22             THE DEFENDANT:  Well, yes, Your Honor.  I do have

23   concerns.  If the indigent form is accepted--

24             THE COURT:  I'm sorry.  If what is accepted?

25             THE DEFENDANT:  I'm filling out an indigent form.
```

1    I would like to be able to use resources, not necessarily

2    attorneys, but resources outside of the court to assist in my

3    preparation of the case.

4              THE COURT:  Well, you just answered your own

5    question.  That's outside the court.  I have--

6              THE DEFENDANT:  Yes, okay.

7              THE COURT:  --no control over that.  And, once

8    again, when you're on your own, you're on your own.  That's up

9    to you as to what you have access to and what someone else can

10   provide to you.  The Court does not provide you any assistance

11   and cannot answer legal questions.

12             THE DEFENDANT:  I--yes, sir, I understand that,

13   Your Honor.

14             THE COURT:  So again, back to my question, you

15   understand that--because I'll ask you a question and you start

16   looking at your lawyers.  And if you go to trial--

17             THE DEFENDANT:  I can't look at my attorneys

18   because I won't have them.

19             THE COURT:  Well, if you're--  If your attorneys

20   show up to represent you, then obviously you can consult with

21   them.  But you're asking me to allow you to represent yourself.

22   I take it that means they will not be here if that is

23   authorized.

24             THE DEFENDANT:  I think that would be the case,

25   Your Honor, yes.

1          THE COURT:  And is--you're telling me that's how
2    you wish to proceed?
3          THE DEFENDANT:  Yes.  I'm just a little nervous.
4    This is, you know, my first day and all, but--
5          THE COURT:  Well, are you familiar with the rules
6    of evidence?
7          THE DEFENDANT:  To a certain extent, Your Honor.
8    I've read--I've read a decent amount.  I would very much like
9    the ability to access resources that I could study the rules of
10   evidence on my own, because that is one of my primary concerns
11   is resources in this case.  The government is a massive
12   machine.  You know, they have millions of dollars--
13         THE COURT:  Well, I don't--I don't want to hear
14   that.
15         THE DEFENDANT:  Yes, okay.  And I have nothing--
16         THE COURT:  The attorneys sitting here spent months
17   studying and learning the rules of evidence in law school.
18   They have practiced with them decades since.  You're telling me
19   that you have studied it part-time basically.
20         I just want you to understand that the rules of
21   evidence govern what comes into evidence before the jury.  And
22   even though you may think something is really important, if you
23   can't get it into evidence--
24         THE DEFENDANT:  Doesn't matter.
25         THE COURT:  --it doesn't matter; it doesn't come

```
 1        in.  Do you understand that?

 2                  THE DEFENDANT:  I do, Your Honor.

 3                  THE COURT:  And do you understand your lack of

 4        knowledge of the rules of evidence may hamper your ability to

 5        have the jury hear evidence that you think is very important,

 6        whether it's testimony or documents or exhibits?

 7                  THE DEFENDANT:  Yes, Your Honor.  And frankly,

 8        that's why I wish to be able to consult with my attorneys

 9        outside of--outside of court, and not in court, so that I may

10        be able to parse out some of the legal issues that I would

11        have, because obviously, like you say, I'm not experienced.

12        And it does help to have experience, but I still feel that this

13        case necessitates self-representation.  And that is my informed

14        and--I would say I--you know, intelligent waiver of counsel at

15        this point.

16                  THE COURT:  Well, Counsel, I'm a little unclear

17        about what you think your status will be moving forward.  If he

18        terminates your representation and is proceeding on his own,

19        there would no longer be attorney/client privilege.  Correct?

20                  MR. MAHONEY:  No, Judge.  There's always--there's

21        always attorney/client privilege if he consults with an

22        attorney.  For example, if he's in jail, he's got the federal

23        defender or private attorneys, thinking about changing

24        attorneys--he can absolutely establish a confidential

25        relationship with another lawyer to explore that.  And I want
```

```
 1     to remain available to him to help persuade him and assist him
 2     decide to change his mind and have representation at a trial,
 3     and he's got that right.
 4              So I--maybe having said that, maybe you'll agree
 5     with me that, in fact, he can always establish an
 6     attorney/client relationship.  He can talk to somebody about a
 7     will.  He can talk to somebody about buying a house, if he had
 8     any assets.  But--so that's my--  And so I don't--I don't
 9     pretend that I would have status to file things with the Court.
10     I don't intend to file pleadings or be involved in that way.
11     But I feel that this is a wrong decision.  I think that the
12     reasons for it are--  I'm going to encourage the Court to look
13     into the records we had yesterday.  We can hopefully have a
14     chance to address that, but--  So that's my status, Judge, is I
15     want to be able to--I don't think that that means he's shut off
16     from the world and the ability to access any advice that he can
17     get from anybody.
18              THE COURT:  Well, I'm just trying to be clear on
19     the record what your status is moving forward.  You will no
20     longer appear as counsel of record in the case.  Correct?
21              MR. MAHONEY:  Yeah, that's right.  If you accept
22     his waiver, Judge, that's right.
23              THE COURT:  All right.
24              MR. BOSTWICK:  Your Honor, I was retained on Friday
25     after his previous counsel withdrew without notice and that was
```

1    granted on Thursday.  Mr. Boukamp has now gone through five or

2    six attorneys.  I think that I have an ethical obligation to

3    state on the record that, according to the rules of

4    professional responsibility, I am his advocate, but I also must

5    look out for his best interest.  And I think he is making a

6    very, very serious mistake that is rooted in a deep, deep

7    delusion and that he should consider an additional--a different

8    approach, Your Honor.

9            And I'm happy to provide Mr. Boukamp with advice

10   going forward.  I'm of counsel in Texas--I have a disability

11   rights firm, which is the reason why the expert in the case

12   reached out to me at the end of last week when Mr. Boukamp was

13   struggling to find counsel.  So I'm here, Judge.  I'm willing

14   to assist in whatever way I can.  But, like Mr. Mahoney, we

15   can't file pleadings on his behalf.  We can't file motions on

16   his behalf.  We can't provide you with research upon which to

17   base a motion.

18           So, Mr. Boukamp, I really ask you to--strongly ask

19   you to reconsider.

20           But, Your Honor, I would ask that you please, as

21   Mr. Mahoney has, take a look at some of the evidence from the

22   competency hearing yesterday, Judge--

23           THE COURT:  Well, I don't see any need to revisit

24   an issue that's already been decided by this Court as far as

25   competency is concerned.  I appreciate your reference to that,

1    but obviously the Court heard extensive evidence and testimony

2    over the last two days and found him to be competent, so I

3    don't see the need to revisit that as far as making this

4    determination.

5            MR. MAHONEY:  Judge, if I could address that, in

6    the Godinez case, Justice Thomas, from the majority--that was

7    one of the first cases that dealt with the question of whether

8    or not there's a different standard of competency for

9    representing yourself as opposed to--or pleading or waiving a--

10   waiving a trial or a jury.  And they said that--in Godinez, the

11   issue came up, and Justice Thomas addressed this, that yes,

12   there is something more, that there is the waiver.

13           And so even though there was a base finding of

14   competency, that does not obviate the need to determine that a

15   waiver of--especially a right to trial--or to an attorney is

16   intelligent and knowing.  Voluntary, yes, that's true.  But in

17   this case, the Court has to--cannot accept the competency

18   finding as a substitute for making an independent inquiry--

19           THE COURT:  That's what we're doing this morning.

20   We're taking that next step.

21           MR. MAHONEY:  And I also suggest, Your Honor, that

22   in terms of really allowing him to speak to his choice and for

23   the Court to be able to evaluate his choice, I don't think you

24   can do that without understanding the psychological records

25   that were produced in that hearing.

 1            THE COURT:  Well, I've already told him what I
 2    think about his choice, as have you and co-counsel, and he--
 3            MR. MAHONEY:  You and I are in agreement on that.
 4            THE COURT:  --he still insists on proceeding in
 5    this manner.  So I still have things to discuss with him, and
 6    we'll see where it goes from there.
 7            MR. MAHONEY:  Sure.  All right.
 8            MR. BOSTWICK:  Thank you, Judge.
 9            THE COURT:  Now, I've already asked you about the
10    rules of evidence.  What about the rules of criminal procedure?
11    I would assume your familiarity is roughly at the same level?
12            THE DEFENDANT:  Yes, Your Honor.
13            THE COURT:  And you understand that, leading up to
14    the trial, there's going to be jury issues and instructions
15    that need to be requested and submitted; that how those are
16    requested, if they are requested, can impact your right to
17    challenge any findings the jury makes moving forward and on
18    appeal.  Do you understand that?
19            THE DEFENDANT:  I think so, Your Honor, yes.
20            THE COURT:  And do you understand that your lack of
21    knowledge in that area could really harm your--not only your
22    presentation at trial, but any appeal that you might wish to
23    take up following a conviction?
24            THE DEFENDANT:  Yes, Your Honor.
25            MR. BOSTWICK:  Your Honor, may I have--

1    THE COURT:  Now--  And referring to both the rules

2    of procedure and the rules of evidence, I want you to

3    understand that, even though this is a very serious matter, the

4    Court will not and cannot relax those rules just because you

5    have no lawyer, that they will be applied to you just as if you

6    were an attorney.

7    THE DEFENDANT:  Yes, Your Honor.

8    Question, Your Honor.  Are motions--are those

9    construed in more favorable light to a pro se defendant?

10   THE COURT:  See, you're already asking me--

11   THE DEFENDANT:  Oh, sorry.

12   THE COURT:  --for legal advice.

13   THE DEFENDANT:  I guess just not legal advice; I'm

14   just wondering if you're obligated--

15   THE COURT:  You're asking--you're asking how the

16   Court would construe your motion.

17   THE DEFENDANT:  Is that legal advice, would you

18   say?

19   THE COURT:  I would say.

20   THE DEFENDANT:  Not fact?  Okay.  Well, I'll drop

21   the question then, Your Honor.

22   THE COURT:  Well, that's how I interpret it.

23   Now, you did mention one thing earlier that I want

24   to go back and address.

25   THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  You indicated that you want the jury to

2     hear from you, hear your story, something to that effect.

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Do you understand that you still have

5     that right even if you're represented by counsel?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  That you--that's ultimately your

8     decision and that you--you can still proceed in that manner

9     with counsel by your side?

10          THE DEFENDANT:  I understand, Your Honor.

11          THE COURT:  I need to advise you that--and I've

12    already stated this generally, but, in my opinion, a trained

13    attorney would defend you far better than you could defend

14    yourself.  And you already have a team of two experienced, well

15    qualified attorneys who represented you yesterday and to this

16    point in the litigation.  I think it is unwise of you to try to

17    represent yourself.  You're not familiar with the law.  You're

18    not familiar with court procedure.  You're not familiar with

19    the rules of evidence.  I strongly urge you not to try to

20    represent yourself in this matter.

21          Now, Counsel, I will give the three of you the

22    opportunity to visit further if you think anything that we've

23    discussed this morning may impact your decision, sir.  And even

24    if it hasn't changed your mind, I would still encourage you to

25    take a moment to visit with your attorneys to see if you would

1    like to reconsider, because, as I just indicated, you're on

2    trial for your life, as you acknowledged--

3                   THE DEFENDANT:  Yes, Your Honor.

4                   THE COURT:  --given the sentences that are in play.

5                   THE DEFENDANT:  Yes, Your Honor.

6                   THE COURT:  And you're obviously a young man, and I

7    would think, in your situation, you would want the best

8    possible situation moving forward that gives you the most--or

9    the best possibility of giving the jury the evidence from your

10   perspective that they need to hear.  In my opinion, the only

11   way that's going to happen is if you have counsel by your side.

12   So I would give you a moment, just wherever the marshals direct

13   you to convene, but--  I'm sorry.  Ms. Woolam?

14                   MS. WOOLAM:  Your Honor, if I may just add one

15   thing that might be important for their discussion.  Dual

16   representation is, as we all know, not permitted where

17   counsel--or a defendant can represent himself but also be

18   represented by an attorney.  Given that he's raised that he

19   still intends to speak to his counsel with questions, just

20   important for him to know that if he represents himself, he

21   wouldn't be able to file an ineffective assistance of counsel

22   claim in the future as part of an appeal.

23                   THE DEFENDANT:  Sounds like a legal question, so I

24   guess I--I can't ask it.

25                   THE COURT:  The government has stated its position,

```
 1    that it believes you would not be able to make that argument on
 2    appeal.  So just--
 3             THE DEFENDANT:  Even for previous counsel?
 4             THE COURT:  --just take that into consideration in
 5    your discussion with your lawyer.  Your lawyer can advise you
 6    as to what he believes, whether that's a correct--  Mr. Haag?
 7             MR. HAAG:  Yes, Your Honor.  One more point that
 8    needs to be brought up is, on the federal system, life is truly
 9    life imprisonment.  And, barring extraordinary circumstances,
10    the sentence would be life in prison.  There would be no
11    release during the lifetime.
12             THE COURT:  Yeah, that's a good point.  The federal
13    system is not the State.  In Texas, a lot of times, whatever
14    the sentence is, they can be released even before a third of
15    the sentence has been served.  I understand that that's not the
16    case in the federal system.
17             THE DEFENDANT:  I--I'm aware, Your Honor, and I--I
18    think it's somewhat absurd that that is the case.
19             THE COURT:  All right.  And--  Now, Ms. Woolam,
20    back to your point, I guess I do have a question.  Obviously
21    there is the right--or, I'm sorry.  You cannot have dual
22    representation.  Is there a case on that as far as being able
23    to challenge that on appeal?
24             MS. WOOLAM:  Your Honor, I don't have a case before
25    me.  I know, in a prior trial, that was part of an admonition
```

1    that Judge Parker gave that attorney.  So I know this defendant

2    has had prior attorneys he may have claims about, but if a

3    person represents themself at a trial, they cannot claim that

4    they, themselves, are then ineffective.

5              THE DEFENDANT:  Oh.  Yeah.

6              THE COURT:  Oh, okay.  I'm sorry.  Yes.  That is

7    correct.  I misunderstood your point.  Thank you.

8              All right, sir.  I will give you as much time as

9    you'd like to visit with your attorneys.  Just have a seat

10   where the marshals direct you to meet, and I will--if you have

11   a question about what we've gone over, what we've discussed, I

12   will do my best to answer that.

13             THE DEFENDANT:  Yes, Your Honor.  I'll try to keep

14   away from legal advice.  My first question is, would it be

15   possible to get a rehearing on pretrial release in the near

16   future?

17             THE COURT:  No.

18             THE DEFENDANT:  No?

19             THE COURT:  No.  That's--under the statute, there

20   are provisions made for that, but--

21             THE DEFENDANT:  Pretrial release is not possible?

22   Is--

23             THE COURT:  No, what I said was, under the statute,

24   there are provisions that provide a mechanism for the Court

25   possibly reviewing that decision.

1        THE DEFENDANT:  Okay.  So I'd have to--I'd have to

2   file with the Court then?  Absolutely, Your Honor.

3        THE COURT:  The detention hearing in this case I

4   believe was conducted in Michigan.  Correct?

5        MS. WOOLAM:  That's correct, Your Honor.

6        THE DEFENDANT:  Which is why I want a rehearing

7   down here.

8        THE COURT:  Well, I'm just telling you the options

9   are very limited.  And again, an attorney would tell you under

10  what circumstances that's a possibility, and whether it's even

11  a possibility here.

12       THE DEFENDANT:  Yes, Your Honor.

13       THE COURT:  Just go ahead and meet with your

14  attorneys, and then I'll have some final questions for you if

15  you still believe this is how you wish to proceed.  I would

16  just, once again, tell you--  And, sir, I'll be honest with

17  you.  Obviously, from the questions that you've asked me today,

18  you understand very well what's going on.

19       THE DEFENDANT:  Yes, Your Honor.

20       THE COURT:  But it reflects how the lack of

21  knowledge about criminal process and procedure is going to

22  hamper you moving forward.  Just imagine yourself sitting in

23  this courtroom with 12 people over there deciding your fate.

24  And you're going to have countless questions come up like that

25  during the course of the trial and you're your own lawyer.  And

1  we've already had three or four questions this morning that

2  I've directed you to the statute or what the law is that you're

3  going to have to decide.  Just, again, picture what that would

4  be like in a trial.

5          THE DEFENDANT:  The real issue I see, at least for

6  me, is, really, I'm not able to really access the law

7  effectively in Lubbock County.  I'm not able to really bring--I

8  had trouble bringing this note to court today.  They could--

9  they--there was a lady--there was a cop that said that I could

10 not bring this sheet of paper to court today.

11         THE COURT:  All the more reason for you to have a

12 lawyer.

13         THE DEFENDANT:  I'm just trying to be treated

14 fairly.

15         THE COURT:  I'm not going to sit here and discuss

16 with you the ins and outs of it, because it's a final decision

17 that you have to make.

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  But once--  And your attorneys have

20 indicated a willingness to continue to assist you, and that's

21 up to them.  But as your own attorney, you're limited to

22 whatever resources you have, and that's--that's the reality of

23 it.  I understand that you might wish to have more access to

24 certain items, but that's the way it goes.  Your attorneys here

25 are outside.  They have got the resources of computers, books,

1    everything at their access.  So that's another factor for you

2    to consider as to whether you wish to represent yourself.

3              THE DEFENDANT:  Your Honor, I think--I think it is

4    highly unfair.  I think it would almost be impossible for me to

5    have a fair trial if I'm denied access to basic legal

6    resources, even with an attorney.

7              THE COURT:  You understand better than I do what

8    you have access to.  You're basing this--

9              THE DEFENDANT:  It's not fair, really.

10             THE COURT:  Whatever it is, whatever resources you

11   have, you're basing your decision on that knowledge.  Okay?

12   You know what access and what resources your attorneys have,

13   and that's what you need to take into account, along with

14   everything else we've talked about this morning, in making the

15   decision as to whether you want to go at this alone.

16             So I want you to visit with your lawyers, and you

17   need to come back and tell me--understanding, all these

18   problems that you've just identified for me--

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  --I agree with you.  Those are

21   significant problems.  That's why I'm telling you you need a

22   lawyer, because they don't have those limitations.  They don't

23   have those restrictions.  Now, just because your lawyer tells

24   you something you disagree with does not mean they are not

25   representing you.  They are giving their advice based on their

1   experience, their knowledge of the law, and what they think is

2   in your best interest.  They are ethically required and bound

3   to do that.

4           So I'll just ask you this.  You told me earlier

5   you've been through six, seven lawyers--

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  --and that you can't--that you're

8   having difficulty with them?

9           THE DEFENDANT:  I'm probably the problem, yes, Your

10  Honor.

11          THE COURT:  I was going to say, the common

12  denominator there--

13          THE DEFENDANT:  Is me.

14          THE COURT:  Okay?  So---

15          THE DEFENDANT:  I'm well aware.

16          THE COURT:  --take a minute and consider the fact

17  that, sometimes the news they bring is not what you want to

18  hear but it may be what you need to hear and that, in them

19  advising you, that's--they are acting in your best interest,

20  because what's what they're required to do.

21          THE DEFENDANT:  I would have to agree, Your Honor.

22  I would also have to say that some attorneys, especially the

23  attorneys I've talked with, are unwilling to risk--I should say

24  take risks, take legal risks that could potentially jeopardize

25  how the Court perceives them and how their professional

1   reputation is in general.  And that's my main--one of my main

2   problems, is that it seems I've not been able to find an

3   attorney that is willing to really put himself out there on the

4   line.  And I think--truly, after going through so many

5   attorneys, I think I'm the only one that can really put himself

6   out there--

7              THE COURT:  Well, why don't you--

8              THE DEFENDANT:  I'm not professionally bound--

9              UNIDENTIFIED SPEAKER:  I don't really have a

10  reputation, Your Honor, so don't worry.

11             THE COURT:  Visit with Mr. Bostwick and your other

12  counsel and find out where things are.  Honestly, obviously, I

13  wasn't in the hearing, so I did not see and hear what

14  transpired.  But in the brief interaction I've had with your

15  attorneys today, I don't see any reluctance on their part to--I

16  mean, that's what a--that's what a trial lawyer gets paid to do

17  is to go to trial and to try a case.  And if--

18             THE DEFENDANT:  I would wonder, Your Honor, the

19  conviction rate in this district--I think it is extremely high.

20  And as far as social factors are concerned, I--I mean, I think

21  it's in the realm of over 95 percent of criminal defendants

22  tried in this court are convicted, and I just don't think

23  that's--that's something I can live with when you tell me--

24             THE COURT:  Well, the majority of these cases are

25  guilty pleas.

1          THE DEFENDANT:  Yes, I'm aware, Your Honor.

2          THE COURT:  But that has--

3          THE DEFENDANT:  I'm aware of what--

4          THE COURT:  That has nothing to do with whether

5   these attorneys are willing to zealously represent you and to

6   put their reputations on the line to--obviously they are not

7   concerned about that.  They have entered appearances for you.

8   If there was any concern in that regard, I don't think they

9   would have associated with your case to begin with.

10         So I don't see a big difference between

11  representing you in the case in general, representing you in

12  the competency hearing, and your willingness to go forward at

13  trial.  Their names are tied to you.  They are tied to this

14  case.  And they have expressed a willingness today to go to bat

15  for you.

16         And so again, it's ultimately your call, but I

17  think you have shown to yourself this morning, just in the few

18  questions you've asked me, the need for competent legal

19  counsel, and that is--that is my recommendation to you.  But

20  I'm going to give you a chance to meet with your lawyers and,

21  you know, make a decision.  Come back and tell me ultimately

22  what you want to do.  Okay?

23         THE DEFENDANT:  Yes, Your Honor.

24         UNIDENTIFIED SPEAKER:  Thank you, Judge.

25         UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

1      THE COURT:  Counsel, let's keep it to five, ten

2  minutes, unless you tell me there's a need to go longer.

3      UNIDENTIFIED SPEAKER:  Yes, Your Honor.  Thank you.

4  May we have a private--a little private space, or--

5      THE COURT:  Yeah, let's do this.  Well, give me

6  just a moment.

7      UNIDENTIFIED SPEAKER:  Thank you, Judge.

8      THE COURT:  All right.  Let's--  Oh, Mr. Haag?

9      MR. HAAG:  Well, Your Honor, I was going to say, we

10  could volunteer to leave the courtroom so that they can have a

11  discussion with just the marshals present.

12      THE COURT:  Well, just understand that the mikes

13  are live, so you may want--

14      UNIDENTIFIED SPEAKER:  We'll step back.

15      THE COURT:  Yeah.  Let's take a recess.  Court will

16  stand in recess until ten after 11:00.

17    (RECESS TAKEN)

18      THE COURT:  Thank you.  Please be seated.

19      All right.  Mr. Bostwick, where do things stand?

20      MR. BOSTWICK:  Mr. Boukamp continues to wish to

21  represent himself, Your Honor.

22      THE COURT:  All right.  Mr. Boukamp, let me tell

23  you how this is going to work if that is your final decision.

24  You have asked that these attorneys be terminated, or you have

25  indicated that that's what you're doing, that you're

```
 1    terminating these lawyers?
 2              THE DEFENDANT:  Yes, Your Honor.
 3              THE COURT:  You also indicated that you wish to
 4    have standby counsel appointed.
 5              THE DEFENDANT:  I would not like standby counsel,
 6    in fact, Your Honor.
 7              THE COURT:  I'm sorry.  I thought you indicated
 8    that you--
 9              MS. WOOLAM:  Your Honor, we requested standby
10    counsel.
11              THE COURT:  Oh, okay.  That was from the
12    government?
13              THE DEFENDANT:  Yes, Your Honor.
14              THE COURT:  Well, given the stakes in this matter,
15    if this is the direction we go, I will appoint standby
16    counsel--
17              THE DEFENDANT:  I'll object to that, Your Honor.
18              THE COURT:  --and that will--  I'm sorry?
19              THE DEFENDANT:  I will object to that, Your Honor.
20              THE COURT:  Overruled.
21              The standby counsel will be the Federal Public
22    Defender's Office here in Lubbock.  Now, obviously you can
23    speak with whoever you have access to from Lubbock County
24    Detention Center, but that's what it will look like moving
25    forward and--with the understanding that you're flying solo at
```

```
 1   that point.  You're the attorney in the case.
 2                THE DEFENDANT:  Yes, Your Honor.  A few--a few
 3   quick things, if--
 4                THE COURT:  Well, no.  I'm just saying, do you
 5   understand that's what it will look like moving forward?
 6                THE DEFENDANT:  Yes, Your Honor.  Yes.
 7                THE COURT:  All right.  So in light of the charges
 8   that you face, the penalties that were described by the
 9   government's attorney, including multiple counts that can
10   result in a life sentence, in light of the difficulties that we
11   have discussed that you will encounter in representing
12   yourself, is it still your desire to represent yourself and to
13   give up your right to be represented by an attorney?
14                THE DEFENDANT:  Yes, Your Honor.
15                THE COURT:  Is your decision entirely voluntary?
16                THE DEFENDANT:  Yes, Your Honor.
17                THE COURT:  Is there anything further the
18   government would like to put on the record in regard to this
19   matter before the Court makes a final decision?
20                MS. WOOLAM:  Yes, Your Honor.  In this case, we
21   have done several protective order agreements with defense
22   counsel, specifically that they do not give copies of discovery
23   to Mr. Boukamp directly.  That was in order to facilitate full
24   discovery that we didn't do some redactions on, and that was
25   agreed to by counsel.
```

1    We would just request that all counsel know, and

2    current counsel sitting here know not to provide any of the

3    discovery to Mr. Boukamp during this transition.  We will

4    provide discovery to Mr. Boukamp appropriately, as he--if he

5    does come on to represent himself.

6    THE COURT:  All right.  Mr. Bostwick?

7    MR. BOSTWICK:  Your Honor, we'll comply with that

8    rule, of course.

9    Just one more thing I'd like to say on the record.

10   During the competency hearing, Your Honor, Drs. Garcia,

11   Montfort, and Kellaher all indicated that Mr. Boukamp has an

12   emotional age range of between two and seven.  So, Your Honor,

13   permitting this defendant to represent himself, I mean, with

14   due respect, would be tantamount to allowing a child to

15   represent himself, and I think we need to take--we just need to

16   take a harder look at this, Judge.  But that's my final

17   statement, and I--

18   THE COURT:  Well, I appreciate that point, but I

19   think the district judge has already considered and rejected

20   that.  I can't imagine that an individual between the age of

21   two and seven would be competent to stand trial.

22   MR. BOSTWICK:  Understood, Judge.  I'm trying my

23   last-ditch effort.

24   THE COURT:  No, I--thank you.  I appreciate that.

25   MR. MAHONEY:  Judge, you didn't ask me, but I think

 1    that--I did want to put on the record that I do object to the

 2    Court making a finding without thorough review of those

 3    competency hearing records.

 4          The other thing is that I'm not so sure about--I

 5    haven't talked to the government about exactly how they would

 6    provide the discovery, because, you know, we do have this.

 7    There's things he needs to know in order to be able to defend

 8    himself.  And I don't know if it's going to be a different form

 9    than we were given, because he certainly needs an equal

10    opportunity to represent himself that we have, so I don't--

11          THE COURT:  Well, I agree that's an issue to be

12    determined.  I don't think it's something that the Court has to

13    decide this morning.  And you've--counsel has indicated that,

14    at least moving forward, it will comply with the government's

15    desire to control the manner in which it's produced.

16    Obviously, if issues arise, that can be brought to the Court's

17    attention and we can address it at that point.  But I think

18    what the government is saying this morning is that that--the

19    material you're currently holding should not be disclosed

20    directly to him, that the government will provide it in a

21    certain form and fashion.

22          Is that correct, Ms. Woolam?

23          MS. WOOLAM:  That's correct, Your Honor.  Both

24    Mr. Guinn and Ms. Key signed and acknowledged a protective

25    agreement that we did stating that they would not provide the

 1   discovery to anyone outside of the legal team or to the

 2   defendant directly.  As the current counsel kind of

 3   transitioned into lead counsel, we did not reengage them on

 4   that, but because they were counsel when Mr. Guinn and Mr. Key

 5   were the--we would say the same agreement applies, and they

 6   would be in violation of that agreement if they provided their

 7   discovery directly to the defendant.  We would, of course,

 8   intend to make all discovery available to the defendant.  This

 9   is not any intent to hide anything.  It's just to ensure the

10   protection of the victim and her privacy rights going forward.

11          THE COURT:  Does defense counsel have any problem,

12   at least at this point, agreeing to proceed in that manner?

13          MR. MAHONEY:  No, of course not, Judge.

14          MR. BOSTWICK:  No, Your Honor.  And I'm grateful

15   that they brought it to our attention.  I was not made aware of

16   that by previous counsel, Judge, so--and we--I have--had begin

17   to amass discovery to give to Mr. Boukamp, so I will--

18          THE COURT:  Thank you.

19          MR. MAHONEY:  One other thing, Judge, that I might

20   have applied for, if Your Honor does grant the request to

21   self-represent, if it hasn't been done, we would apply

22   eventually to ask the Court to consider appointing--I don't

23   know if it's an advocate or intermediary who--from the autism

24   field to be able to help Mr. Boukamp as an accommodation to his

25   disabilities.

```
 1              All government actors are subject to the
 2    Rehabilitation Act, federal government agencies and the ADA,
 3    the State agencies, and to accommodate people with
 4    disabilities.  And so in the court system, there is sort of a--
 5    and there was testimony about this, sort of the need to
 6    translate and help people with disabilities navigate this
 7    system as a witness, as a defendant.  And there's excellent--at
 8    Texas Tech here in Lubbock, there's the CASE program, which is
 9    designed to help students who come to the university that have
10    the academic abilities and so on, but--
11              THE COURT:  Let me--I apologize for interrupting,
12    but let me ask you this, and I meant to ask you earlier and I
13    forgot, but the request brought it to mind.  If I appoint
14    stand--or I am going to appoint standby counsel.  Are the two
15    of you willing to serve in that capacity, or--because if you're
16    not, I will appoint FPD here in Lubbock.  But obviously, that's
17    something that you could assist him with in--possibly in that
18    role.  I mean, my answer is, he's his own lawyer.  It's up to
19    him to make that request.  That's what he has asked for, and
20    that's where he's at.
21              Now, if you are asking the Court to appoint you as
22    standby counsel, then that's possibly something you could
23    assist him in that regard.  But obviously that would require
24    you to be present for trial.  And that reminds me, the trial
25    setting--  And, Mr. Boukamp, this may impact your decision as
```

1   well.  But this case will be set for trial June 6th, 2022,

2   following your arraignment this morning.  So--

3           MS. WOOLAM:  Your Honor, if I may?

4           THE COURT:  Yes.

5           MS. WOOLAM:  Given the amount of discovery, there's

6   certain discovery that we obviously, as child pornography,

7   cannot provide directly to Defendant.  There will have to

8   likely be some issues dealt with with that.  We would request

9   the trial on the July docket.

10          THE COURT:  Well, the trial date that I've been

11  provided is June 6th.  The parties can file either a joint

12  motion for continuance or a motion to continue if you believe

13  additional time is necessary, but--

14          MS. WOOLAM:  Yes, Your Honor.

15          THE COURT:  --that's the date that's been provided.

16          So--

17          MR. MAHONEY:  It would be difficult for me to serve

18  as standby counsel, Judge, given the--

19          THE COURT:  And that's--no, that's understandable.

20  I just meant to provide that opportunity.  And I understand,

21  given the logistics of where you live, and for that reason, I

22  think it is better to appoint FPD, just for any number of

23  reasons.

24          MR. BOSTWICK:  I agree, Your Honor, as well.  I

25  would be happy to serve in that capacity.  However, I don't

1   think Mr. Boukamp would want me to do that.  But I have talked

2   to him about continuing to provide advice of counsel on an

3   informal basis.

4               THE COURT:  All right.

5               MR. MAHONEY:  I think that Mr. Boukamp--yeah,

6   Mr. Boukamp would prefer appointing Mr. Bostwick, Your Honor.

7               THE COURT:  I'm sorry?

8               MR. MAHONEY:  Mr. Boukamp would prefer to have

9   Mr. Bostwick.

10              MR. BOSTWICK:  No, I'm retained, Your Honor.  I'm

11  not on your court appointment list, so I don't--I don't do that

12  typically.  I'm generally retained.  But I'm happy to serve in

13  that capacity at the Court's pleasure.

14              THE COURT:  Well, I think, given the issues that

15  we've already identified, I think--I think it would be best to

16  have standby counsel that's local.  Now, obviously, that does

17  not in any way impact your ability to continue to consult with

18  these attorneys if they wish to do that and you're able to do

19  so.

20              But I am going to appoint Wade Iverson with the

21  Federal Public Defender's Office to serve as standby counsel in

22  this matter.  Now, you can still consult with these attorneys

23  if they wish to provide that service.  And, as noted, subject

24  to the granting of a motion for continuance, this case is set

25  for trial June 6th, 2022.

1              Now, I suspect the Court has previously done this,

2     but out of an abundance of caution, I am going to go ahead and

3     provide the Rule 5(f) admonishment.  The government--or, I'm

4     sorry.  As required by Rule 5(f), counsel for the United States

5     is ordered to comply with the prosecutor's disclosure

6     obligations under *Brady vs. Maryland* and its progeny.  The

7     government's failure to comply may result in consequences such

8     as the dismissal of charges, exclusion of witnesses or

9     evidence, adverse jury instructions, contempt proceedings, and

10    sanctions.

11             Ms. Woolam, does the government acknowledge its

12    obligations in that regard?

13             MS. WOOLAM:  Yes, Your Honor.

14             THE COURT:  All right.  So, Mr. Boukamp, as you

15    have indicated, your attorney's representation is terminated in

16    this matter.  You are representing yourself moving forward.  I

17    find that you have knowingly and voluntarily waived your right

18    to counsel, and the Court will therefore permit you to

19    represent yourself.  And Mr. Iverson with the FPD's Office will

20    serve as standby counsel.

21             Is there anything further the Court needs to take

22    up in regard to this matter?

23             MS. WOOLAM:  No, Your Honor.

24             THE DEFENDANT:  Yes, Your Honor.

25             MR. MAHONEY:  I don't think you arraigned him,

1    Judge, on the superseding, did you?

2          THE DEFENDANT:  I have not pled.

3          MS. WOOLAM:  That's true, Your Honor, he has not

4    entered his plea on the superseding--second superseding

5    indictment.

6      [Indiscernible simultaneous speaking]

7          THE COURT:  I appreciate that.  We did go over the

8    charges and the punishment, but yes, thank you.  I did not

9    actually take your plea.

10         Now, Mr. Boukamp, as you know, earlier we went over

11    the charges alleged in the second superseding indictment.  We

12    also discussed the--or the government's attorney went over for

13    you the range of punishment as to each count.

14         So, first of all, do you understand the nature of

15    the charges?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And do you understand the penalties you

18    face if you're convicted?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  How do you plead to the charges

21    contained in the second superseding indictment?  Guilty or not

22    guilty?

23          THE DEFENDANT:  Not guilty, Your Honor.

24          THE COURT:  All right.  Your case, as I said, will

25    be set for trial June 6th, 2022.

```
1              THE DEFENDANT:  One thing, Your Honor, if I may?

2              THE COURT:  Just a moment.

3              THE DEFENDANT:  Okay.

4              THE COURT:  Counsel, thank you for pointing that

5    out, even though you are no longer on the clock.

6              And, Ms. Woolam, anything else?

7              MS. WOOLAM:  I don't believe so, Your Honor.

8              THE COURT:  Okay.  Now, Mr. Boukamp?

9              THE DEFENDANT:  Okay.  Sorry, Your Honor.  I just--

10   yesterday, I got cut off, and I don't want to let it happen

11   again, you know.  But I just want to make sure that my legal

12   papers will be protected.  I would like the Court's assurance

13   that that is possible.

14             THE COURT:  I don't--I don't know what you're

15   talking about.

16             THE DEFENDANT:  Obviously I'm subject to random

17   search and seizure at Lubbock County Detention Center, but I

18   still want to make sure that I have the ability to retain

19   privacy, you know, some sort of, well, yeah, ability to retain

20   my privacy and review the discovery privately and be able to--

21             THE COURT:  Well, first of all, the Court does not

22   interject itself in the day-to-day operation of detention

23   facilities.  That's delegated to the states or the BOP.

24             Second, there is a general right to the protection

25   of legal materials, and the facilities understand that.  And
```

1    it's my understanding that they recognize that and take steps

2    to protect that.

3              If anything happens in that regard that you believe

4    violates that, you can bring that to the Court's attention.

5    But beyond that, it's your responsibility to comply with the

6    facility's requirements to make sure that that material is

7    identified and treated accordingly.

8              THE DEFENDANT:  Yes, Your Honor.  And I should take

9    that up with the marshals, because them not allowing me to

10   bring legal materials is obviously going to significantly

11   hamper my case.

12             THE COURT:  Well, the marshals understand how

13   things work.

14             THE DEFENDANT:  Okay.

15             THE COURT:  And if you communicate to them--

16             THE DEFENDANT:  Absolutely.

17             THE COURT:  --appropriately, your rights will be

18   protected in that regard.

19             THE DEFENDANT:  Thank you, Your Honor.  That's all

20   I have.

21             THE COURT:  All right.  I will remand you to the

22   marshals' custody.

23             And, Ms. Woolam, that's all I see on the Court's

24   docket this morning.  Anything further?

25             MS. WOOLAM:  No, Your Honor.

1        THE COURT:  All right.  Court will stand adjourned.

2     (END OF HEARING)

3


4     I, Mechelle Daniel, Federal Official Court Reporter in and
for the United States District Court for the Northern District

5  of Texas, do hereby certify that the foregoing is a correct
transcript to the best of my ability from a digital sound

6  recording of the proceedings in the above-entitled matter.

7


8   /s/ Mechelle Daniel                  **DATE**   JUNE 7, 2022

9  MECHELLE DANIEL, CSR #3549
FEDERAL OFFICIAL COURT REPORTER

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25