UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

UNITED STATES OF AMERICA,
          PLAINTIFF

V.                            CASE NO. 5:20-CR-00165-H

JOHN THOMAS BOUKAMP,
          DEFENDANT

### AFFIRMATION IN SUPPORT OF MOTION FOR NEW TRIAL PURSUANT TO FRCP 33

Megan M. Gower, being duly sworn, affirms under penalty of perjury as follows:

1. I am a law student at Texas Tech University School of Law, and I expect to receive my law degree in May of 2024. At the present time, I have worked as a law clerk for Chappell, Lanehart & Stangl, P.C. for a year and a half.

2. Prior to attending law school, I had extensive experience with individuals with autism. I worked at the Burkhart Center for Autism Education and Research for almost three years while obtaining my undergraduate degree from Texas Tech University. From August 2018 until May 2021, I was employed at the Burkhart Center as a work study where I managed the front desk. I interacted daily with people with autism, who ranged from young children to adults in their twenties. My main responsibilities were providing resources for autism testing and answering questions

about the programs available through the Burkhart Center. In this position, I was also used to help facilitate social skills lessons for applied behavioral analysis (ABA) therapy and, when specialists were unavailable, helped students and parents with situations that I was capable of addressing.

3. I received my undergraduate degree from Texas Tech University in May of 2021 where I obtained a Bachelor of Arts in History and Political Science.

4. I was contacted by Leslie Jackson, MSW, Director of Statewide Education and Outreach for the Autism Society of Texas to see if I would be interested in attending the trial in this case as an observer, given my combined interest in, and experience with, autism and criminal law. I was also informed that Mark Mahoney, one of the attorneys who had represented Mr. Boukamp until he moved to represent himself and was permitted to do so, had sought assistance of the Autism Society in finding an independent observer experienced in dealing with autistic individuals. Mr. Mahoney needed an independent observer who would be able to watch and report on how the management of the courtroom proceedings accommodated or exacerbated Mr. Boukamp's autism-related deficits, especially in ways that would not be fully reflected in the transcript of the proceedings. Believing that this was a good opportunity to examine the treatment and functioning of a person with autism in the court system, I made arrangements to take time off of my work to observe the trial. I was not paid for this time and effort.

5. During the morning session on June 14th, 2022, I saw that Mr. Boukamp's mouth was twitching and he looked distressed while Judge Hendrix read the charges to the venire. I observed Mr. Boukamp become visibly upset and turn quickly in his chair to face Judge Hendrix when Judge Hendrix referred to Mattie as the "victim," instead of the "alleged victim," shown on volume one page 26 lines 5 and 6 of the record. When the Government questioned the venire, I observed that Mr. Boukamp would stare at the venire with a flat affect, frequently rocked back and forth in his chair, and habitually jerked his head. Mr. Boukamp's flat affect seemed consistent with my experience with individuals with autism, who often have a difficult time exhibiting appropriate facial expressions for their current situation. Mr. Boukamp's repetitive actions were similar to my experience observing other individuals with autism, who often engage in "stimming," which is repetitive behavior to help calm them when their senses are overstimulated. When Mr. Boukamp questioned the venire, I observed that he appeared to be thrown off when he was interrupted after trying to bring up the mandatory minimum sentence.

6. When Mr. Boukamp was giving his opening statement during the afternoon session of June 14th, 2022, I saw that there was a lot of movement in and out of the courtroom that caused the door to be noisy. I observed that when the door would creek or make a loud noise, Mr. Boukamp would look around the courtroom for where the noise was coming from. I saw that when the door made a really loud noise, Mr. Boukamp would pause his opening statement and seem thrown off. This reaction

seemed similar to experiences I had working with individuals with autism at the Burkhart Center, who would become highly distressed and overstimulated when unexpected or loud noises went off. In my experience at the Burkhart Center, it may take a period of minutes to an hour for an individual with autism to regain their focus and ability to work on the current task after becoming overstimulated by a loud noise. Mr. Boukamp was not able to take a break and refocus on his opening statement, and at times he seemed to lose his decorum and composure.

7. I observed Mr. Boukamp be interrupted by Judge Hendrix, who corrected him on procedure and the permissible content of his opening. After these interruptions, Mr. Boukamp had a difficult time getting back on track and it appeared that Mr. Boukamp may have cut his opening statement short. This was similar to my experience helping with social skills lessons for individuals with autism. Sometimes for social skills lessons, the individuals with autism were given scripted talking points to help aid them in building the skills and confidence to hold a conversation with new people. When helping with this, if the conversation got off track from what was expected, I often observed that the individual with autism would need to stop the conversation and be given a few minutes to plan what they would say next. Similarly, Mr. Boukamp seemed to be working off a scripted opening statement and, similar to the social skills therapy recipients, did not appear to adjust well to unexpected interruptions or changes in the content of his opening statement. Unlike

the social skill therapy recipients, Mr. Boukamp was not afforded a break to revise what he planned to say.

8. The content of Mr. Boukamp's opening statement never presented a valid defensive strategy. This is evidenced by volume one page 114 line three of the record, when Mr. Boukamp informed the jury during his opening that he was not there to be a lawyer. In my experience with individuals with autism, they may become extremely fixated on an idea or thing and be unable to see past their fixation. Mr. Boukamp was fixated on proving that he loved Mattie, evidenced by the fact that Mr. Boukamp spoke of his love for Mattie four times during his opening, shown on volume one page 113 lines seven through nine, and volume one page 115 line 15 of the record.

9. During the afternoon session of June 14th, 2022, I observed the direct and cross examinations of David Worley. During Mr. Boukamp's cross examination of David Worley, Judge Hendrix objected to his questions multiple times. For example, Judge Hendrix told Mr. Boukamp that a question was "asked and answered," was hearsay, or was not relevant, when the Government made no objection. Judge Hendrix rushed Mr. Boukamp through his examination, saying "next question," and directed him to quit his effort to elicit information for lines of questioning, saying "next topic." I saw that Mr. Boukamp appeared thrown off by these interruptions, evidenced by volume one page 143 lines two through four of the record where Mr. Boukamp indicated that he was having a difficult time adapting his questions to the

rules of evidence. This is further evidenced by volume one page 163 lines 17 and 18 of the record, where Mr. Boukamp indicated that he lost a significant portion of his questions for cross examination due to the interruptions. Mr. Boukamp also did not appear to understand at this time that he could argue objections.

10. During the afternoon session of June 14th, 2022, I saw that Mr. Boukamp was picking at his face and ear and rocking in his chair a lot during the direct examination of Detective James Smith. I observed that these stimming behaviors intensified as Detective Smith read Discord messages between Mr. Boukamp and Mattie. Around 3:00pm, I saw Mr. Boukamp rub his face and he appeared tired. In my experience with individuals with autism, I have noticed they can grow excessively fatigued by social and/or stressful situations. This appeared to happen with Mr. Boukamp, who would openly yawn or seem like he was no longer paying attention during the late morning and afternoon hours of trial. During Mr. Boukamp's cross examination of Detective Smith, I saw Mr. Boukamp begin to mirror the behavior of the Assistant U.S Attorneys such as standing when addressing Judge Hendrix and mimicking how they phrased questions. This is consistent with what I have observed with individuals with autism, who often mimic the behavior of others in social situations to fit in and appear normal.

11. Before the jury was brought in on the morning session of June 15th, 2022, I observed Mr. Boukamp raise a motion for accommodations. I saw Mr. Boukamp ask for his schedule in custody to be modified because he was not getting enough sleep

to effectively prepare for trial. I observed at this time that Mr. Boukamp did have dark circles under his eyes that were not there the previous day. Mr. Boukamp also asked not to be rushed because it causes him to become stressed and overstimulated. Judge Hendrix denied Mr. Boukamp's motion for accommodations but informed Mr. Boukamp he could take a pause if he felt rushed. As Mr. Boukamp finished his cross examination of Detective Smith, I observed that he tried to pause when using an exhibit to refresh Detective Smith's memory and was rushed by Judge Hendrix to ask a question, shown on volume two page 288 line 20 of the record. Mr. Boukamp being rushed through his cross examination, combined with his exhaustion, likely harmed his ability to effectively cross examine Detective Smith as individuals with autism may have a difficult time processing and adjusting to fast-paced situations.

12. I saw Mr. Boukamp ask Detective Smith multiple open-ended questions and Mr. Boukamp appeared to get flustered when he did not get the answers he wanted. As Mr. Boukamp became increasingly flustered, I heard his speech grow louder and faster and he would often interrupt Detective Smith. I observed Mr. Boukamp ask for a break to find Discord messages that he needed for his cross of Detective Smith, which he was denied. Mr. Boukamp becoming flustered and losing his decorum during Detective Smith's cross could have potentially been prevented if he was permitted a break during cross examination.

13. When the morning session of June 15th, 2022 resumed after the break, I observed Mr. Boukamp engage in stimming behavior by frequently picking at his

face and rocking in his chair during the direct examinations of Special Agent Mark Sedwick and DNA Analyst Michelle Schmitt. I saw Mr. Boukamp yawn and begin to look tired around 11:00am during these directs. Mr. Boukamp did not cross examine either witness.

14. During the afternoon of June 15th, 2022, I saw that Mr. Boukamp did not maintain his composure when Sexual Assault Nurse Examiner, Rachel Stone, stated that a lack of trauma in a SANE exam could be due to a perpetrator's small penis size. When Stone made this comment, I overheard a large group of people in the gallery, sitting on the Government's side, loudly laugh and make demeaning comments about Mr. Boukamp. This behavior was not uncommon throughout trial from those sitting on the Government's side. When this laughter occurred, I saw Mr. Boukamp's head searching for the direction where the laughter was coming from. The unexpected noise from the gallery, similar to the loud noise from the courtroom door, likely harmed Mr. Boukamp's ability to focus in trial and caused him to become overstimulated. While cross examining Rachel Stone, I observed that Mr. Boukamp engage in stimming by picking at his neck.

15. On the afternoon of June 15th, 2022, during the direct examination of Mattie Worley, I saw that Mr. Boukamp was fixated on staring at Mattie. Before Mr. Boukamp began cross examining Mattie, he objected to the fact that he could not see Mattie's face and could not see her expressions. I saw that the bottom half of Mattie's face was covered by a monitor in front of her. Mr. Boukamp's demeanor and tone

of questioning drastically changed with Mattie compared to how he interacted with other witnesses. Mr. Boukamp questioned Mattie in a very calm, soft tone as opposed to his louder, and at times more aggressive, demeanor with other witnesses. This appeared related to his fixation on his love for Mattie. When Mattie answered a question by stating that she did not love him, shown on volume one page 498 lines six and seven of the record, I observed Mr. Boukamp begin to cry. I saw Mr. Boukamp cry harder as he attempted to get through more questions before AUSA Woolam asked for a break.

16. During the afternoon break of June 15th, 2022, I saw AUSA Haag speaking with Mattie Worley as he brought her back into the courtroom. Mr. Boukamp asked AUSA Haag if he was conversing with a sworn witness. I could not hear all of AUSA Haag's response, though his tone and body language appeared to become aggressive. I saw that Judge Hendrix's clerk was close to this conversation and stepped forward as if about to intervene before AUSA Haag walked away.

17. When the afternoon session of June 15th, 2022 resumed, I observed that Mr. Boukamp began to cry again in response to Mattie's answers to questioning. Mr. Boukamp repeatedly expressed his love for Mattie on cross examination. The last time he did this, I heard half the jury box and courtroom audibly react negatively. Towards the end of the day, it appeared that Mr. Boukamp ran out of questions he could ask Mattie. I saw Mr. Boukamp take long pauses when asked if Mattie could be excused and he would attempt to ask questions he had already covered.

18. Before the jury was brought in on the morning of June 16, 2022, I observed that Mr. Boukamp appeared very tired and had bags under his eyes. I also observed Mr. Boukamp check out and smirk at a female U.S. Marshall. Again, this was similar to my experience with other individuals with autism who have difficulty maintaining an appropriate composure and expression for the situation they are in. During the direct examination of Child Advocacy Center Forensic Interviewer John Wuerflein, I saw Mr. Boukamp shake his head when Wuerflein stated that perpetrators groom children into thinking the perpetrator is a good person. During Mr. Boukamp's cross examination of Wuerflein, Mr. Boukamp got Wuerflein to agree that a person with the emotional intelligence of a young child would not be able to groom a person of Mattie's developmental age, shown on volume three page 562 lines nine through twelve of the record. However, Mr. Boukamp never established, during this cross or the rest of his case, how his autism affected him socially. When an objection was sustained during Mr. Boukamp's cross of Wuerflein, I observed that Mr. Boukamp appeared to be thrown off and his speech became louder and faster.

19. After Mr. Boukamp began his case in chief on the morning of June 16th, 2022, I observed that he called Special Agent John Bentley to the stand for impeachment purposes. It did not appear that Mr. Boukamp ever fully understood impeachment. I observed Mr. Boukamp pulling on his eye lashes and he attempted to address the jury directly after walking back from a bench conference. When Mr. Boukamp attempted to introduce an exhibit, he was interrupted by Judge Hendrix to

inform Mr. Boukamp of the proper procedure. This appeared to fluster Mr. Boukamp.

20. While Judge Hendrix read the jury charge on the morning of June 16th, 2022, I observed Mr. Boukamp yawn and rub his face around 10:30am. I also observed Mr. Boukamp engage in stimming behaviors by pulling at his facial hair and rocking in his chair. During the Government's closing, I observed Mr. Boukamp intensify picking at his face, and he twisted his pen so hard it looked like it might break when AUSA Woolam discussed Discord messages of Mattie telling Mr. Boukamp to leave her alone. When AUSA Woolam discussed Mr. Boukamp's threats to Mattie, I observed Mr. Boukamp rub his eye and it appeared that he might have been crying.

21. When the Government objected during his closing statement, Mr. Boukamp did not seem to understand that he needed to wait for Judge Hendrix to rule on an objection before he continued speaking. When Mr. Boukamp attempted to bring up the mandatory minimum sentence, Judge Hendrix interrupted Mr. Boukamp again and instructed the jury that they were not to consider punishment. Shortly after this, Judge Hendrix interrupted Mr. Boukamp to tell him how much time he had left for his closing statement. These interruptions appeared to throw off Mr. Boukamp and I observed that he began to laugh and state he lost his place in his closing statement. I saw Mr. Boukamp laugh again and he remind himself that he was talking about "the truth.," shown on volume three page 655 lines 13 through 15 of the record. In my experience, people with autism may laugh at inappropriate times during tense or

stressful situations. During the Government's rebuttal, I observed Mr. Boukamp engage in stimming behavior by shaking his head and picking at his face.

22. When interrupted by Judge Hendrix, Mr. Boukamp had a difficult time adjusting the content of his opening statement, cross examinations, and closing statement. Individuals with autism may need more time to process and adjust to fast paced situations, like a federal trial. Mr. Boukamp's inability to adjust the content of his case could have been helped if he was permitted a break to revise what he planned to say after the Government finished a direct examination or after significant interruptions. The same issue was also likely exacerbated by Judge Hendrix rushing Mr. Boukamp through his cross examinations by saying "next question," "next topic," and "question." Mr. Boukamp's autism-related deficits could have been better accommodated if Judge Hendrix had not rushed him through questioning.

23. During Mr. Boukamp's trial, I saw him frequently engage in stimming behavior by pulling at his skin and hair, and rocking in his chair. This behavior indicates he may have been highly overstimulated and was focused on calming himself down to keep an appropriate composure, rather than focused on paying attention to the Government's case and presenting a defense. The issue of Mr. Boukamp's senses being overstimulated could have eased if an instruction had been given to people in the gallery to be quieter while coming in and out of the courtroom and observing the trial. Furthermore, Mr. Boukamp's loss of composure and, at times, aggressive or inappropriate behavior were likely caused by his autism.

Individuals with autism often have difficulty exhibiting appropriate behavior and facial expressions for the gravity of the situation they are in, especially when under significant stress. Considering the importance of a defendant's demeanor when jurors assess the weight of evidence, an instruction to the jury on how Mr. Boukamp's autism affected his behavior could have helped accommodate Mr. Boukamp's autism-related deficits.

Dated: August 29, 2022

_Megan Gower_
Megan M. Gower

Sworn before me this
29 day of August, 2022.

_Bernadette Vaughn_
Notary Public

BERNADETTE VAUGHN
My Notary ID # 12016757
Expires June 26, 2024