UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

THOMAS JOHN BOUKAMP,

     Defendant.

No. 5:20-CR-165-H

## ORDER DENYING MOTION FOR NEW TRIAL

Although Boukamp exercised his constitutional right to represent himself despite the Court's warnings not to do so, he now asserts that the Court erred by granting his request. Dkt. No. 266. He alleges that his comments, filings, and trial performance demonstrate he was incapable of representing himself, especially in light of what he sees as the Court's trial mismanagement. But the record and case law prove otherwise. First, Boukamp's motion does not challenge the Court's determination that he was competent to stand trial, and he was thus competent to waive his right to counsel, which he did knowingly, voluntarily, and intelligently. Second, although a Court may deny a defendant his right to self-representation when severe mental illness prevents him from conducting trial proceedings, doing so here would have been erroneous because Boukamp was competent. He demonstrated consistently that he understood the proceedings and was actively engaged throughout trial—much more so than the typical pro se defendant—and he was able to adjust to interruptions resulting from the Court's enforcement of the rules of evidence and case management. And while the Court recognizes that many with autism spectrum disorder would not be competent to proceed pro se, the scope or effect of Boukamp's ASD did not render him incompetent to represent himself. The motion for new trial is denied.

1.      **Factual and Procedural Background**

This case stems from Boukamp's decision to drive from Michigan to Texas, pick up a minor victim, and take her back to Michigan, where he repeatedly sexually assaulted her. These events occurred after months of online chats and phone calls—beginning when the victim was thirteen years old—where Boukamp solicited and produced child pornography. He manipulated the victim through harassment, intimidation, and threats.

A Second Superseding Indictment charged Boukamp with sixteen counts: (1) transportation of a minor with intent to engage in criminal sexual conduct; (2) travel with intent to engage in illicit sexual conduct; (3) enticement and attempted enticement of a minor; (4) receipt of child pornography; (5) cyber stalking; (6) receipt of child pornography; and (7) ten counts of production and attempted production of child pornography. Dkt. No. 89 at 1–7. The jury found him guilty of each count. Dkt. No. 239. The facts most relevant to Boukamp's motion for a new trial are as follows.

A.      **The Court finds Boukamp competent to stand trial.**

After several trial continuances—and just a few days before the August 2021 trial was set to begin—Boukamp filed a Motion for Competency Hearing. *See* Dkt. No. 78. The Court ordered a hearing to determine whether there was reasonable cause to grant the motion. Dkt. No. 79. The government also filed a motion for psychiatric exam (Dkt. No. 84), and the Court, finding good cause, granted Boukamp's motion for a competency hearing and vacated the trial date pending that hearing (Dkt. No. 86, 87).

After various delays, the Court held a six-hour, contested competency hearing. Dkt. No. 121; *see also* Dkt. No. 207 (memorandum opinion and order finding Boukamp competent to stand trial). Both sides presented sworn expert testimony. Two of the

defense's testifying experts were neither forensic psychologists nor trained to give opinions on competency.  One of those experts, Dr. Montfort, admitted her lack of qualifications on the subject (Dkt. No. 221 at 183–85), and the other, Dr. Garcia, admitted that this was her first competency evaluation (*Id.* at 215).  Thus, Dr. Garcia recommended that someone with forensic training conduct an additional evaluation.  The defense's third expert, Dr. Kellaher, had forensic training, but the Court disagreed with her opinion on competence.  Dkt. No. 207.

The government's expert—an experienced forensic psychologist who has conducted over 30 competency evaluations—was unable to independently diagnose Boukamp because the defendant refused to participate in her testing, despite fully submitting to evaluation by his own three experts.  Although the government's expert noted that Boukamp's behavior seemed consistent with ASD, she found Boukamp competent to stand trial based on behavioral observations, interviews, and available materials—including Boukamp's jail calls and messages to the victim:

> While Mr. Boukamp presents with characteristics previously diagnosed as Autism Spectrum Disorder, including rigid and inflexible thinking, there was no indication that he lacked the ability to rationally and factually understand his charges, or work with counsel.  Through phone conversations and statements in the psycholegal interview, he expressed an ability to take advice from others and consider alternative options, especially as it related to proceeding with counsel.  Therefore, he appears able to understand the nature and consequences of the proceedings against him, and assist properly in his defense.

Dkt. No. 207 at 8 (citing Gov. Ex. 1 at 19).

After hearing and considering the expert testimony and the parties' briefing, the Court found Boukamp competent to stand trial.  Dkt. No. 123.  Specifically, the Court found that he (1) "[was] mentally competent to stand trial"; (2) "ha[d] a factual and rational

understanding of the charges against him" and "underst[oo]d the nature and consequences of the proceedings against him"; (3) "ha[d] sufficient present ability to consult with his attorney and [] properly assist his attorney in his defense"; and (4) "[was] not [then] suffering from a mental disease or defect that would interfere with his ability to meet the legal criteria of competency to stand trial." *Id*. at 2.  The Court explained in its 31-page memorandum opinion and order that all experts agreed that Boukamp "displays behavior consistent with [ASD] but has a high degree of intellect and verbal ability" and "factually knows the charges against him, his plea options, and the nature and consequences of the proceedings against him."  Dkt. No. 207 at 13.  The Court also found that he has a rational understanding of the proceedings against him.  *Id*. at 17–24.  And it explained that although Boukamp tended to disagree with counsel, he had the ability to consult with a lawyer and had even assisted in his defense at the competency hearing by making several evidentiary objections.  *Id.* at 26–31.  Following its detailed analysis, the Court concluded that "Boukamp is clearly competent to stand trial."  *Id.* at 31.

> **B.    Boukamp exercises his constitutional right to represent himself.**

Following his competency hearing, the Court arraigned Boukamp on the Second Superseding Indictment.  Dkt. 125.  At that time, Boukamp informed the magistrate judge of his intention to terminate his counsel and proceed pro se.  Dkt. Nos. 125; 222 at 4.  As explained in more detail in Section 3.B, the Court conducted a *Faretta* hearing, during which Boukamp was informed of the charges he was facing and their elements, the potential penalties, and the risk of proceeding pro se without knowledge of the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, and courtroom procedures.  Dkt. No. 222 at 6–39.  The Court advised against self-representation and gave Boukamp an

opportunity to reconsider with counsel during a recess, but Boukamp persisted in his decision.  *Id.* at 27, 37–39.

Following these warnings and confirmations, the Court found that Boukamp "knowingly and voluntarily waived [his] right to counsel" and permitted him to represent himself.  *Id.* at 46.  The Court reminded the defendant that trial was set for June 6 and would not be continued absent an order of the Court.  Dkt. No. 222 at 44.  And the Court appointed standby counsel.  *Id.* at 45.

At the pretrial conference, Boukamp again confirmed his desire to proceed pro se. Dkt. Nos. 228, 254 at 4–19.  The Court, this time through the district judge, reminded Boukamp of the dangers of self-representation—including his lack of knowledge and experience with the rules and procedures for trial—and strongly advised him against representing himself.  Dkt. No. 254 at 4–19.  The Court also explained that, at any point, standby counsel could step in if he chose to exercise his right to counsel again.  *Id.* at 16. Nevertheless, Boukamp reaffirmed his decision to represent himself.  *Id.* at 18–19.

### C. Boukamp represents himself at trial and actively engages throughout, including during voir dire, opening, witness examinations, and closing.

Relative to typical pro se defendants, Boukamp was highly capable and was able to participate in all stages of the proceedings.  He filed numerous pretrial motions.  Most of these were rational, coherent, and requested relief.  *See, e.g.*, Dkt. No. 167 (Boukamp's Motion in Limine, which requested suppression of jail calls, citing the language of Federal Rules of Evidence 401 and 403, as well as the Fourth Amendment).  At times, Boukamp's pretrial motions were grandiose and pointed towards a dilatory motive, while others were relevant and helpful.  *Compare* Dkt. No. 173 (Motion to Preserve America and Uphold the Constitution), *with* Dkt. No. 214 (Defendant's Proposed Voir Dire Questions, which

included questions regarding minor child victims, preference for government witnesses, and specialized knowledge of digital forensics).  Overall, Boukamp's pretrial-motion practice showed a defendant who was competent to stand trial and represent himself—much more so than the average pro se criminal defendant.

During his trial, Boukamp participated in voir dire (Trial Tr. 1 (Dkt. No. 256) at 15–87); provided opening and closing statements (*Id.* at 112–14; Trial Tr. 3 (Dkt. No. 258) at 98–199); cross-examined and recross-examined witnesses (*See, e.g.*, Trial Tr. 2 (Dkt. No. 257) at 16–74); called a witness (Trial Tr. 3 at 29); made objections (*See, e.g.*, Trial Tr. 1 at 104, 184, 186); and even caught a mistake in the jury charge that no one else did (Trial Tr. 3 at 52–53).  Boukamp's opening statement, closing statement, and questioning centered around one theory: Boukamp and the victim were in love with one another, so he could not have—and did not—entice, coerce, or force the victim into any activity.  *See, e.g.*, Trial Tr. 1 at 113; Trial Tr. 2 at 23–32; Trial Tr. 3 at 102.  On the third day, after the close of evidence, the jury convicted Boukamp of all 16 counts.  Trial Tr. 3 at 130–34.

After trial, the Court commented specifically on Boukamp's preparation and engagement throughout trial:

> I want to thank both sides for their diligence and the arguments that were made.  Mr. Boukamp, I've seen pro se defendants, both as an attorney and as a judge.  I've seen multiple pro se defendants, and, by far, you were the best prepared that I've seen by far.  You were the smartest that I've seen.  You made valid objections at times that I sustained.  You caught an error in the Court's charge that I didn't catch, my law clerk didn't catch, the government didn't catch, but you caught it.
>
> So I appreciate your diligence.  When you said that you were really trying your best, that was apparent.  That was very clear to me.  You made, for the most part, lucid points and arguments, and I appreciate your preparation and respect of that process.

Trial Tr. 3 at 138.

2.   **Legal Standard**

Under Federal Rule of Criminal Procedure 33, "the [C]ourt may vacate any

judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.

Although the Court has discretion to grant or deny the motion, "motions for new trial are

not favored, and are granted only with great caution."  *United States v. O'Keefe*, 128 F.3d 885,

898 (5th Cir. 1997) (citing *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977)).

"The remedy of a new trial is rarely used" and "is warranted only where there would be a

miscarriage of justice."  *Id.* (internal quotation marks omitted); *see also United States v. Wall*,

389 F.3d 457, 466 (5th Cir. 2004) (The Fifth Circuit "has held that the trial court should not

grant a motion for a new trial unless there would be a miscarriage of justice . . . .").

3.   **The interest of justice weighs against a new trial because Boukamp validly
     exercised his constitutional right to represent himself after thorough warnings,
     and he competently conducted trial proceedings.**

In his motion, Boukamp argues that the Court should grant him a new trial because

it "should have required Boukamp to be represented by counsel."  Dkt. No. 266 at 3.  He

alleges that although the Court found him competent to stand trial and determined he had

knowingly and voluntarily waived his right to counsel, the Court should have prohibited

him from proceeding pro se because of his actions, filings, performance at trial, and ASD,

citing *Indiana v. Edwards*, 554 U.S. 164 (2008).  *Id.*  Thus, although he does not contest the

Court's determination that he was competent to stand trial, Boukamp claims that the Court

should nevertheless have denied him of his constitutional right to represent himself because

he was incapable of doing so.  *See id.*

The Court denies the motion.  First, the case on which Boukamp relies, *Edwards*, is

permissive and does not require the Court to deny a competent defendant his right to

represent himself. *United States v. Fields*, 761 F.3d 443, 467–68 (5th Cir. 2014). Second, the Court properly applied the relevant standards in determining that Boukamp was competent to stand trial, waive counsel, and represent himself. Whatever the scope or nature of Boukamp's disability or disorder, he is not "so severely mentally ill that his self-representation threatens an improper conviction." *Id*. at 467. Finally, despite the claims made in his motion and the attached affidavit, Boukamp's conduct throughout the trial process undermines any claim that he was incapable of self-representation.

### A. *Edwards* does not require the Court to deny a competent defendant his right to self-representation.

Under the Sixth Amendment, a criminal defendant has a constitutional right to waive representation by counsel and "conduct[] his own defense without [the] benefit of counsel." *Faretta v. California*, 422 U.S. 806, 814 (1975) (internal quotations omitted). To exercise his right, the defendant must clearly and unequivocally inform the Court of his desire to proceed pro se and make his decision knowingly and intelligently. *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008).

Nevertheless, in *Edwards*, the Supreme Court held that a court is permitted to prevent a defendant from exercising his right to self-representation if he "suffer[s] from severe mental illness to the point where [he] is not competent to conduct trial proceedings by himself." 554 U.S. at 178. The Supreme Court declined to adopt a particular standard for measuring a defendant's ability to conduct a trial, noting that mental illness "is not a unitary concept" and "varies in degree." *Id*. at 175, 178. However, the Supreme Court recognized that the Court "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Id.* at 177.

– 8 –

As the Fifth Circuit explained in *Fields*, however, *Edwards* is "permissive, allowing the state to insist on counsel, but not requiring that the state do so."  761 F.3d at 467–68 (quoting *Panetti v. Stephens*, 727 F.3d 398, 414 (5th Cir. 2013)).  Far from a mandatory or bright-line rule, *Edwards* "applies only in the exceptional situation where a defendant . . . is so severely mentally ill that his self-representation threatens an improper conviction or sentence."  *Id.* at 467 (quoting *Panetti* at 414–15).  Thus, while *Edwards* "addressed the constitutionality of the denial of the right to self-representation" and provided the Court with "discretionary authority," it did not "address the competency of a defendant who is granted the right to self-representation" nor "suggest that a trial court which allows a defendant to represent himself is required to first ascertain that he is capable of doing so." *Fields*, 761 F.3d at 467, 469 (internal quotations omitted).  In any event, the Court in this case did so.

### B.   The Court properly determined that Boukamp was competent to waive his right to counsel and represent himself.

Boukamp's assertion that a new trial is required due to his inability to represent himself ignores fundamental aspects of this area of the law, along with key portions of the record.  As the Supreme Court explained in *Godinez v. Moran*, "[t]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive* the right, not the competence to *represent himself*."  509 U.S. 389, 399 (1993) (emphasis added).  "Competence to . . . waive the right to counsel is measured by the same standard as competency to stand trial."  *Austin v. Davis*, 876 F.3d 757, 782 (5th Cir. 2017).  Additionally, before the Court can grant "a defendant's clear and unequivocal request to proceed pro se," the Court must ensure that the defendant's waiver is "knowing and intelligent" (*Id.* at. 782– 83) by making the defendant "aware of the dangers and disadvantages" of representing

himself so that "his choice is made with eyes open." *McQueen v. Blackburn*, 755 F.2d 1174, 1177 (5th Cir. 1985) (quoting *Faretta*, 422 U.S. at 835).  Finally, the defendant's waiver must be voluntary, "not the product of actual or threatened physical harm, or mental coercion." *Austin*, 876 F.3d at 783 (internal quotations omitted).  And although a Court may deny a defendant his right to represent himself, doing so is limited to exceptional cases where, in the Court's discretion, it determines that the defendant is so impaired that he cannot conduct trial proceedings.  *Fields*, 761 F.3d at 467.  Therefore, a defendant does not have to possess "the skill and experience of a lawyer in order [to] competently and intelligently [] choose self-representation." *McQueen*, 755 F.2d at 1177 (quoting *Faretta*, 422 U.S. at 835).  If the Court determines that the defendant's waiver is knowingly and voluntarily made and that his request to represent himself is clear and unequivocal, then the defendant will be permitted to represent himself.  *Godinez*, 509 U.S. at 401–02.

Because the Court complied with each aspect of this area of the law and properly exercised its discretion, a new trial is unwarranted.  First, because the Court determined correctly that Boukamp was competent to stand trial, he was necessarily competent to waive counsel.  *Davis*, 876 F.3d at 782.  As detailed above, the Court held a lengthy, contested competency hearing and considered competing views of multiple expert witnesses.  *See* Dkt. Nos. 221, 222.  After consideration of the exhibits, testimony, and briefing, the Court found that Boukamp had a factual and rational understanding of the charges against him, understood the nature and consequences of the procedures against him, had sufficient present ability to consult with his attorney and properly assist his attorney in his defense, and was not then suffering from a mental disease or defect that would interfere with his ability to meet the legal criteria of competency to stand trial.  Dkt. No. 123.  The Court's

memorandum opinion and order detailed its findings of competency (Dkt. No. 207), and Boukamp does not contest those findings in his motion for a new trial.

Second, before permitting Boukamp to proceed pro se, the Court confirmed that Boukamp knowingly and voluntarily waived his right to counsel and unequivocally asserted his right to represent himself.  During the *Faretta* hearing, Boukamp expressed his unequivocal desire to terminate his representation and move forward by representing himself.  Dkt. No. 222 at 4.  To ensure that Boukamp was aware of the disadvantages of self-representation, the Court had all sixteen counts of the Second Superseding Indictment read to Boukamp along with the penalties he could face for each count, questioning Boukamp on his understanding throughout this process.  *Id.* at 6–15.  The Court also warned him that his unfamiliarity with the Federal Rules of Criminal Procedure and Federal Rules of Evidence could negatively impact his performance at trial.  *Id.* at 25–26.  In addition, the Court provided the following warnings:

> I need to advise you that . . . in my opinion, a trained attorney would defend you far better than you could defend yourself.  And you already have a team of two experienced, [well-qualified] attorneys who represented you yesterday and to this point in the litigation.  I think it is unwise of you to try to represent yourself.  You're not familiar with the law.  You're not familiar with court procedure.  You're not familiar with the rules of evidence.  I strongly urge you not to try to represent yourself in this matter.

*Id.* at 27.  After the Court provided a recess for Boukamp to discuss his desire to proceed pro se with his counsel, Boukamp still requested unequivocally to represent himself.  *Id.* at 37–39.  At the hearing's conclusion, the Court found that Boukamp had knowingly and voluntarily waived his right to counsel.  *Id.* at 46.  The Court did, however, appoint standby counsel.  *Id.* at 45–46.

But the Court's attention to the issue did not stop there.  At the pre-trial conference, the Court essentially conducted a second *Faretta* hearing—once again warning Boukamp of the risks and potential consequences of proceeding pro se.  Dkt. No. 254 at 4–19.  The Court began the pretrial conference by revisiting Boukamp's decision.  *Id.* at 4.  After confirming that Boukamp recalled waiving his right to counsel before the magistrate judge, the Court asked him if he "still wish[ed] to waive [his] right to an attorney and represent [himself]" during trial.  *Id.* at 4–5.  Boukamp answered, "Yes, Your Honor."  *Id.*  To be certain that Boukamp wished to proceed pro se, even when on the verge of trial, the Court provided a detailed explanation of Boukamp's charges and the penalties he could potentially face for each count and in total, reminding Boukamp of what would be at stake during trial.  *Id.* at 6–11.  The Court also questioned Boukamp on his knowledge of the Federal Rules of Evidence and Criminal Procedure and warned him that "those rules [would] govern the way that [a] criminal action [would] be tried in this [C]ourt" and that both sides would be bound by these rules.  *Id.* at 12–13.  The Court reminded him that standby counsel was significantly more experienced and knowledgeable about the law (*Id.* at 11–12) and would be able to step in at any point should Boukamp choose to have counsel represent him again (*Id.* at 16).  The Court advised Boukamp against proceeding pro se:

> I have to advise you, sir, that in my opinion, a trained lawyer, especially an expert like [standby counsel], would defend you far better than you can defend yourself.  I think it's unwise for you to represent yourself.  It's your constitutional right to do so.  You're not familiar with the law.  You're not familiar with procedure or rules of evidence.  I would strongly urge you to not represent yourself.

*Id.* at 13.

Nevertheless, Boukamp persisted in his decision to represent himself, and the Court again found that he had knowingly and voluntarily waived his right to counsel and clearly

and unequivocally chose to represent himself.  *Id.* at 16–19.  As evidenced by both his *Faretta* hearing and the pre-trial conference warnings and examination, the Court went to great lengths to ensure that Boukamp was aware of the potential risks and difficulties he might face and had competently made his decision.  *See* Dkt. Nos. 222, 254.

Finally, and most relevant here, the Court found Boukamp "competent to conduct trial proceedings and to represent [himself]."  Dkt. No. 254 at 19.  The Court based this finding on multiple factors, including (1) Boukamp's responses to the Court's questions; (2) the Court's interactions and observations of Boukamp; (3) his numerous, coherent pro se filings; and (4) for the reasons previously detailed in the memorandum opinion and order finding him competent to stand trial.  *Id.*  There was no indication during the pro se pretrial litigation, *Faretta* hearing, or pretrial conference that Boukamp suffered from a mental illness or intellectual disability to such a severe degree that his self-representation would threaten an improper conviction.  *See Fields*, 761 F.3d at 467–68.  To the contrary, Boukamp demonstrated consistently that he better understood the proceedings and was more actively engaged in them than the typical pro se criminal defendant.  For example, Boukamp:

- Sought advice from the magistrate judge during the *Faretta* hearing about how to protect his privileged material while incarcerated, Dkt. No. 222 at 48–49;

- Paid attention and engaged throughout his competency hearing, including by making relevance and speculation objections, Dkt. No. 221 at 23–24, 220–21;

- Filed a successful motion in limine to prevent the government, without prior approval, from introducing his jail calls, which were prejudicial, Dkt. Nos. 167, 220;

- Moved successfully for appointment of an expert to help him cross-examine and rebut the government's sexual assault nurse examiner, Dkt. Nos. 181, 193, 196.

- Asked successfully for sealed, ex parte witness subpoenas, Dkt. Nos. 185–91, 195;

- Filed multiple substantive pretrial motions, including motions to suppress, to dismiss multiplicitous counts, to continue the trial date, and for pretrial release, Dkt. Nos. 142–43, 174–75;

- Filed required pretrial materials, including a witness list, exhibit list, proposed voir dire questions, and proposed jury instructions, Dkt. Nos. 212–16; and

- Actively and respectfully engaged during the pretrial conference, Dkt. No. 254.

This constellation of activity and evidence left the Court with no hesitation regarding Boukamp's ability to conduct pretrial proceedings.  In fact, it left the Court with the firm belief that, under these circumstances, denying Boukamp of his constitutional right to represent himself—however unwise his decision may have been—would have been error. *See, e.g.*, *United States v. Sanders*, 843 F.3d 1050, 1055 (5th Cir. 2016) (holding that "the district court violated [the defendant's] right to self-representation by forcing him to accept [counsel]"); *United States v. Richardson*, 478 F. App'x 82, 90–92 (5th Cir. 2012) (holding that the district court erred in denying a defendant's right to self-representation after the district court "concluded that having professional counsel was a wiser course of action and would make for a cleaner and fairer trial").  Moreover, the Court recognizes that while many with ASD would not be competent to proceed pro se, the scope or effect of Boukamp's ASD did not affect his ability to represent himself to such a severe degree that it rendered him incompetent.  Boukamp was clearly a difficult client, believed his conduct with the victim was consensual, and disagrees with America's laws preventing sexual activity with minors. But none of these traits, which are not uncommon in pro se defendants, indicated a severe intellectual or developmental disability that would render him incompetent and justify denial of his constitutional right to represent himself.  To the contrary, his litigation conduct demonstrated his competence to proceed pro se.

Nothing has changed the Court's mind since trial, including the defendant's motion for a new trial, and precedent establishes that the trial judge is best positioned to make this determination. *Edwards*, 554 U.S. at 177 (explaining that trial courts will "often prove best able to make more fine-tuned mental capacity decisions"); *Fields*, 761 F.3d at 467–69 (affirming the district court's rejection of the defendant's competency arguments); *Roof*, 10 F.4th 314, 363 (4th Cir. 2021) (quoting *United States v. Bernard*, 708 F.3d 583, 593 (4th Cir. 2013)) (relying on the district court's comments on the defendant's performance in affirming the district court's decision, explaining that this "evaluation is significant because '[t]he district court [i]s in the best position to observe [the defendant] and its determinations during trial are entitled to deference'"). In fact, the Court has found no case reversing a district court's determination that a defendant was competent to proceed pro se. And at the close of trial, the Court applauded Boukamp on his preparation, efforts, and respect of the trial process. *See* Trial Tr. 3 at 138.

### C.   Boukamp capably represented himself.

Although competence does not depend on trial performance, the defendant—relative to other pro se defendants—capably represented himself. Boukamp alleges that his "actions and filing leading up to the trial," "performance during the trial," and "the Court's responses to that performance demonstrate the necessity that this Court should have required Boukamp to be represented by counsel." Dkt. No. 266 at 3. In support, he points to motions he filed prior to trial (*Id.* at 4–5); his difficulty during trial, including with properly questioning witnesses, submitting evidence, and understanding time estimates for opening and closing arguments (*Id.* at 5–8); and his acknowledgment of his own shortcomings in representing himself (*Id.* at 8–9). He also relies on an affirmation attached

to his motion for support of "his inability to adequately represent himself," which centers on his experts' ASD diagnosis. *Id.* at 5; Dkt. No. 266-1. But the record and relevant authority undermine each of these contentions.

### i. Boukamp competently conducted trial proceedings.

As cases from the Supreme Court, the Fifth Circuit, and other circuit courts indicate, Boukamp was competent to represent himself because he was able to complete trial tasks and engage in his self-representation. Although the Supreme Court in *Edwards* did not set a particular standard for evaluating a defendant's ability to represent himself, the Court pointed to a defendant's inability "to carry out the basic tasks needed to present his own defense" as an example of circumstances where a Court might consider prohibiting a defendant from proceeding pro se. *Id.* at 175–76. The Supreme Court cited *McKaskle*, which describes trial tasks as making motions, participating in voir dire, putting forth a defense, arguing points of law, questioning witnesses, and addressing the court and the jury during trial. *Id.* at 176 (citing *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984)).

Fifth Circuit precedent likewise indicates that a defendant's demeanor and filings may undermine a defendant's post-trial claim that he was incapable of representing himself. In *Fields*, for example, the Fifth Circuit affirmed the district court's finding that the criminal defendant was competent to waive his right to counsel despite his mental conditions, noting that the district court had reached its conclusion after considering the defendant's "pro se motions" and "demeanor at trial." *Id.* at 469. The Fifth Circuit explained that these factors, combined with doctors' previous evaluations and the district court's conversations with Field regarding his decision to waive counsel, indicated that the defendant was competent to represent himself. *Id.* at 469–70.

– 16 –

Sister circuits consistently reach similar conclusions.  In *United States v. Bernard*, the Fourth Circuit affirmed the district court's decision to permit the defendant to proceed pro se, explaining that the defendant displayed competence by making opening and closing statements and testifying during his trial, as well as having his case "re-opened in order to conduct an examination of a law enforcement officer who he had previously declined to cross-examine during the Government's case-in-chief."  708 F.3d at 587, 592.  The Fourth Circuit found no error, even though the defendant "made no objections during the Government's case-in-chief," did not question two of the witnesses, and did not call any witnesses on his own behalf.  *Id.* at 592.

Moreover, in *United States v. Berry*, the defendant challenged his conviction, arguing that he should not have been permitted to represent himself.  565 F.3d 385, 390–92 (7th Cir. 2009).  The Seventh Circuit affirmed, explaining that although the defendant "made statements that [the Seventh Circuit] can only generously call absurd" and used a strategy that ultimately failed, the defendant had "aimed throughout the trial to convince the jury" of his theory.  *Id.* at 387, 389.  And in *United States v. Thompson*, the Ninth Circuit declined to remand the case in light of *Edwards* and the defendant's self-representation, noting that the defendant had "participated extensively throughout his trial."  587 F.3d 1165, 1173 (9th Cir. 2009).  That court contrasted the defendant's behavior with the defendant's behavior in *United States v. Ferguson* (*id.* at 1172–73) (citing 560 F.3d 1060, 1069 (9th Cir. 2009)), where the defendant "did absolutely nothing—no voir dire questions for the judge to ask, no opening statement, no closing argument, no objections, no cross-examination, no evidence, and no witnesses."  *Ferguson*, 560 F.3d 1060 at 1069 (remanding the case in light of *Edwards*, which was issued post-trial).

The result does not necessarily change when a defendant has ASD.  To the contrary, caselaw indicates that a defendant with ASD may still have the mental capacity to represent himself.  In *United States v. Roof*, the district court held two competency hearings prior to the penalty phase, which centered around defendant Dylan Roof's ASD, and found Roof competent to stand trial.  10 F.4th at 334–41.  Roof eventually asked to represent himself, and the district court allowed him to do so, including during his capital sentencing.  *Id.* at 348–49, 353.  Roof ultimately received the death penalty and later argued that the district court should not have permitted him to represent himself because he had ASD.  *Id.* at 353–356, 364–65.  The Fourth Circuit, however, affirmed the district court's finding that Roof was competent to represent himself.  *Id.* at 362–63.  The court noted that although Roof "allegedly suffered from . . . disorganized thinking, reduced processing speed, memory problems, and difficulty integrating new information," "defendants like Roof can suffer mental illness while having the intellectual capacity to self-represent."  *Id.* at 362 (internal quotations omitted).  The court went on to explain that "[p]erhaps the best evidence that Roof indeed had the mental capacity to perform the basic tasks of self-representation is that he did perform them."  *Id.* at 363.  Roof had participated in jury selection, conducted cross-examinations, "delivered an opening statement, argued against aggravating factors, challenged the prosecution, and made a closing argument."  *Id.*  According to the court, Roof's ability to complete these tasks demonstrated that he was competent to proceed pro se.  *Id.*

Likewise here, regardless of his experts' ASD diagnosis, Boukamp was able to complete "the basic tasks of self-representation" prior to and during trial.  Boukamp filed several motions in anticipation of his trial, including many that were granted in whole or in

part by this Court. *See* Dkt Nos. 162 (granting in part Boukamp's Motion for Continuance, including his request to extend certain deadlines); 196 (granting in part Boukamp's Motion for Expert Witnesses); 220 (granting Boukamp's Motion in Limine). Boukamp also participated in voir dire on the morning before his trial (*See* Dkt. No. 236 at 15–87) and asked various questions to the panel members (*Id.* at 71–80). His questions centered on the age when an individual becomes an adult, the story of Romeo and Juliet, knowledge of Romeo-and-Juliet laws, being young and in love, and experience with individuals who have disabilities, including autism. These questions indicated his awareness of the case, the charges against him, and the theory he planned to develop during trial. *Id.*

During trial, Boukamp also provided an opening statement (*Id.* at 112–14) and a closing statement (Trial Tr. 3 at 98–199), sharing the same theory on both occasions: he was in love with the victim, and they were star-crossed lovers. *See, e.g.*, Trial Tr. 1 at 113 ("And I loved her, and I want each and every one of you to know that."); Trial Tr. 3 at 102 ("I love her. I hope I made that clear. I really do."). Like the defendant in *United States v. Berry*, Boukamp maintained this ultimately unsuccessful strategy throughout the entirety of his trial—even questioning witnesses and referring to evidence relating to this theory—which demonstrates that he was not only competent but also tactical in the way he chose to approach his case. *See, e.g.,* Trial Tr. 1 at 113, 249–50; Trial Tr. 2 at 231–32, 246–47, 255–56, 259; Trial Tr. 3 at 24–25, 100–05, 107, 111.

Other actions also indicate that Boukamp fully participated at trial and was competent to represent himself. For instance, Boukamp called a witness during trial for the purpose of impeachment (Trial Tr. 3 at 29). He was also thoughtful about who he intended to call, which is demonstrated by Boukamp's willingness to excuse one individual on the

witness list while still requesting that another individual remain in the courthouse in the event he decided to call her.  Trial Tr. 3 at 8–11.  Like the defendant in *Roof*, Boukamp engaged in cross-examination and even recross-examination of the witnesses that the Government called.  *See, e.g.*, Trial Tr. 1 at 133–63, 177, 247–57; Trial Tr. 2 at 16–74, 79–84, 118–23, 124–25, 146–51, 169–86; 220–60; Trial Tr. 3 at 19–26.

The examples do not end there.  Many times during his cross-examination, Boukamp directed his questioning back to his strategy of showing the jury that he and the victim were purportedly in love.  *See, e.g.*, Trial Tr. 1 at 249–50; Trial Tr. 2 at 231–32, 246–47, 255–56, 259; Trial Tr. 3 at 24–25. Additionally, Boukamp raised several objections throughout trial (*See, e.g.*, Trial Tr. 1 at 104, 184, 186; Trial Tr. 2 at 41, 76, 99, 133; Trial Tr. 3 at 11, 48, 120) and argued in opposition to objections that the Government raised before the Court ruled on them (*See, e.g.*, Trial Tr. 1 at 252; Trial Tr. 2 at 33, 48, 243, 249, 253, 256, 257).  Boukamp even caught a mistake in the jury charge during the charge conference and brought it to the Court's attention.  Trial Tr. 3 at 52–53.  He also requested that the jury be polled after the verdict.  *Id.* at 132–38.

As demonstrated by these actions, Boukamp was able to complete self-representation tasks like those discussed in caselaw and actively participate in his representation, demonstrating that he could competently represent himself.  Thus, a new trial is unwarranted.

### ii.   Boukamp's shortcomings in representing himself do not demonstrate that he was incompetent to represent himself.

To be sure, Boukamp was a pro se litigant who made many mistakes and questionable strategic decisions.  But any deficiencies in Boukamp's performance while proceeding pro se are not sufficient to demonstrate that he was incompetent to represent

himself.  In his motion, Boukamp points to his own shortcomings to assert that the Court should not have permitted him to represent himself, such as his lack of knowledge on procedures for jury selection and his struggle with appropriately questioning witnesses.[1] Dkt. No. 266 at 8–9.  However, the Supreme Court has "made clear that the defendant's 'technical legal knowledge' is 'not relevant' to the determination [of] whether he is competent to waive his right to counsel." *Godinez*, 509 U.S. at 400 (quoting *Faretta*, 422 U.S. at 836).  Thus, "while '[i]t is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts,' a criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation." *Id.* at 400.  And although the defendant loses "many of the traditional benefits associated with the right to counsel" and "may conduct his own defense ultimately to his own detriment," the Court must respect the defendant's decision to represent himself if he makes it knowingly and willingly. *Faretta*, 422 U.S. at 834–35.  Therefore, Boukamp's occasional poor performance and lack of technical legal knowledge do not indicate that the Court should have required him to be represented by counsel.

### iii.     The Court assigns no weight to the second-year law student's affidavit because she is not qualified to address either ASD or pro se trial management.

In support of Boukamp's argument that ASD prevented his effective self-representation, defense counsel filed an affidavit written by a second-year law student,

---

[1] Boukamp also asserts that he had insufficient time to review discovery and prepare for trial.  Dkt. No. 266 at 4.  However, the Court addressed and rejected these assertions in its order denying a seventh continuance.  Dkt. No. 144.  There, the Court explained that after Boukamp had made the decision to proceed pro se, the Court had taken steps "to ensure[] that he ha[d] access to the government's discovery in his cell, in the jail's law library, and at the United States Attorney's Office." *Id.* at 2–3.

which purports to explain how the Court's trial management "exacerbated Mr. Boukamp's autism-related deficits." Dkt. No. 266-1 at 2. Defense counsel proffers the student as an expert on ASD and, apparently, management of pro se criminal trials. Dkt. No. 266 at 5 (citing the student's affidavit as evidence of the Court's "excessive" interjections and failure to properly accommodate Boukamp). The student faults the Court for, in her view, "rushing" Boukamp through cross-examinations, unnecessarily interrupting him, and not providing enough breaks. *Id.* at 4–5, 7 10, 12–13. She asserts that "[w]hen interrupted by Judge Hendrix, Mr. Boukamp had a difficult time adjusting . . . . The same issue was also likely exacerbated by Judge Hendrix rushing Mr. Boukamp through his cross examinations by saying 'next question,' 'next topic,' and 'question.' Mr. Boukamp's autism-related deficits could have been better accommodated if Judge Hendrix had not rushed him through questioning." *Id.* at 12. The student, however, lacks the expertise and qualifications to make such allegations and, in any event, they stem from an incomplete understanding of pro se criminal trials.[2] Thus, the Court disregards the affidavit.

First, the student is not qualified to present an expert opinion on Boukamp's competency or his behavior during trial. *See* Dkt. No. 266-1. Her observations and opinions are purportedly based on "extensive experience with individuals with autism." *Id.* But her only stated experience with ASD is working the front desk of an autism-research center for a few years during college. *Id.* at ¶ 2. The student has not received any formal clinical experience or training. Nor did she study autism through psychology, social work, human development, or any other formal discipline while in college—let alone receive an advanced

---

[2] Although the student chose to draft, sign, and present the affidavit, the Court wonders why defense counsel would choose to put a second-year law student without any formal education or training with ASD—and apparently no experience with federal pro se criminal trials—in this position.

clinical degree.  Rather, she obtained a Bachelor of Arts in History and Political Science.
She does not claim to have any formal education or training with intellectual or
developmental disabilities.  Because she is unqualified to give opinions on defendants with
ASD, the Court gives her views on this front no weight.

Second, with only one full year of law school—and with no indication that she has
ever observed another pro se criminal trial—the student is unqualified to comment on the
Court's trial management.  She has no point of reference or relevant comparators by which
to judge the Court.  Having presided over—and litigated against—multiple pro se criminal
defendants, the Court does.  As explained above, Boukamp was much more effective than
the average pro se defendant.  And while Boukamp's cross-examination of his minor
victim—and her father—resulted in a more intense atmosphere than the standard trial, the
Court's need to prevent the pro se defendant's questioning from becoming overly redundant,
irrelevant, improper, or abusive was fairly typical.  The Court balanced Boukamp's right to
cross-examination with the victim's and her father's right not to be subject to abusive
questioning.  An examination of the record makes clear that Boukamp was given ample
opportunity to cover the relevant topics within the boundaries of the rules of evidence.  And
aside from the student's inexperience with pro se criminal trials, she lacks critical context to
understand the Court's trial management.  She was not present during Boukamp's
competency hearing, *Faretta* hearing, or pre-trial conference, nor did she have access to
sealed filings and discovery.  *See id.*

Moreover, the Court disagrees with the student's characterizations of Boukamp and
the detrimental effect that trial procedures had on him.  Again, the student lacks a point of
reference, but Boukamp appeared no more nervous or distractable than an average pro se

defendant.  Any distracting or repetitive behaviors by Boukamp were minimal; they did not disrupt the proceedings or prevent him from paying attention and staying engaged.  The Court likewise rejects the claim that Boukamp had a flat affect.  Both before the jury and with witnesses, he was passionate at times, aggressive at times, and calm at times, which the student recognizes, at least in part.  Dkt. No. 266 at 9 ("Mr. Boukamp questioned [the victim] in a very calm, soft tone as opposed to his louder, and at times more aggressive, demeanor with other witnesses.").  Additionally, he was able to recover from interruptions and distractions much more quickly than typical pro se defendants.[3]  *See, e.g.*, Trial Tr. 1 at 146, 155; Trial Tr. 2 at 19, 180–81; Trial Tr. 3 at 30–31, 106.  Boukamp was clearly prepared for each stage of trial, and although he expressed frustration towards the Court's evidentiary rulings preventing him from addressing certain topics, he was able to adjust and move on.  In any event, the Court informed Boukamp that he could ask at any time for a break if he needed one.  Dkt. No. 254 at 96.

In sum, because the student has no formal education, training, or experience with ASD, the Court will not consider her opinions regarding Boukamp's behavior.  And because she has no substantial background in the law, the Court will not consider her opinions regarding Boukamp's performance at trial or the Court's trial management.  Trial courts are vested with broad discretion to enforce trial procedures, manage the presentation of evidence, and control their courtrooms.  *See Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488, 492 (5th Cir. 2013) ("[C]onsiderable discretion is vested in district courts in

---

[3] The Court rejects the student's assertion that it was "not uncommon throughout trial" for people sitting on "the [g]overnment's side" to "loudly laugh and make demeaning comments about Mr. Boukamp." Dkt. No. 266-1 at 8.  The Court does not recall any laughter or demeaning comments, and the transcript does not reflect any.  The Court, of course, would not have tolerated laughter and demeaning comments from the gallery "throughout trial."

ensuring fair trials and avoiding a 'circus atmosphere.'"). Consequently, the Court attributes no weight to the student's affidavit.

4.     **Conclusion**

Because (1) *Edwards* is permissive, allowing but not requiring the Court to prevent a defendant from exercising his constitutional right to represent himself; (2) Boukamp knowingly and voluntarily waived his right to counsel—after being found competent to stand trial and represent himself—and clearly and unequivocally exercised his right to represent himself; and (3) Boukamp demonstrated that he was competent to represent himself by completing basic self-representation tasks prior to and during trial, the Court denies Boukamp's motion for a new trial.

So ordered on October 20, 2022.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE